Highway Insurance Company, a Stock Company, and Elvin Erkard, Plaintiffs, Elvin Erkard, Plaintiff-Appellant, v. Sears, Roebuck and Company, a Foreign Corporation, and James Staunton, Defendants-Appellees.

Gen. No. 52,234.

First District, First Division.

February 19, 1968.

Howard & Gager, of Chicago (Ollie E. Stone, of counsel), for appellant.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Burton Y. Weitzenfeld and Michael R. Turoff, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury action, in which plaintiff, Elvin Erkard, appeals from a summary judgment entered in favor of defendants. Defendants' motion for summary judgment alleged that at the time of the alleged injury, plaintiff was "a loaned employee" of defendant Sears, Roebuck and Company, and Nugents-American Contractors, Inc., was "a loaning employer," and that the action was barred as to both defendants by the Illinois Workmen's Compensation Act (Ill Rev Stats 1965, c 48, §§ 138.-1(a)4 and 138.5(a)).

The trial court, in granting defendants' motion for summary judgment in favor of both defendants, found there was no issue of a material fact and that the guidelines of American Stevedores Co. v. Industrial Commission, 408 Ill 449, 97 NE2d 325 (1951), were applicable.

On appeal, the determinative issue is whether, under the undisputed facts here, plaintiff was "a loaned employee" of Sears as a matter of law. Plaintiff contends that there was a material issue as to whether the relationship of master and servant existed between plaintiff and

Sears, because Sears did not have the power to discharge plaintiff and, also, the determination of the relationship of master and servant was a question of fact for a jury.

Nugents-American Contractors, Inc., was in the business of supplying temporary labor to various firms. On May 31, 1963, plaintiff was instructed by Nugents to report to Sears and was told to do whatever Sears personnel told him to do. At Sears, plaintiff was instructed to work with and under the direction of defendant Staunton, a Sears' employee. Staunton told plaintiff what to do, how and when to do it, his working hours, when he could eat lunch and when he could take a break. During that day, plaintiff was injured in the course of his work by a lift truck driven by defendant Staunton.

Nugents was paid under a contract by Sears and out of the contract proceeds Nugents paid the men supplied to Sears, including plaintiff, an hourly wage for the hours reported to it by Sears for work done on its premises. Nugents made income tax withholding deductions and social security deductions from the men supplied to Sears, including plaintiff. Plaintiff's work procedure with Nugents was that he would report either in person or by telephone to Nugents, and they would direct him where he was to work on that particular day.

An affidavit of Nugents' comptroller states that after plaintiff reported to Sears for work, Sears "had the direction and authority over the work of said Elvin Erkard while he was so engaged on their premises. That said Sears, Roebuck and Company. had the right to direct said employee to report back to Nugent's American, in the event they deemed it necessary or desirable."

Defendants contend that the factual situation in American Stevedores Co. v. Industrial Commission, 408 Ill 449, 97 NE2d 325, is similar, and the pronouncements there made apply here. In that case, American Stevedores was engaged in the business of furnishing laborers

216

to warehouses and sent some of its men, with a straw boss, to Frigidaire Sales Corporation. There they were placed at work under his direction and subject to Frigidaire's instructions. The superintendent of Frigidaire under their arrangement had no power to discharge the men individually, but if he was dissatisfied with any man, he would indicate this to the straw boss, who would immediately telephone Stevedores and have another man sent to the job. The initiation of discharging men came from Frigidaire. Time slips were prepared by Frigidaire and delivered to Stevedores, who paid the men. One of the Stevedores, men so employed at Frigidaire was fatally injured by a mobile hoist operated by a Frigidaire employee. The Industrial Commission found that the injured man was not an employee of Frigidaire. The trial court made a finding of joint employment and ordered Stevedores and Frigidaire to each pay one-half of the amount of workmen's compensation fixed by law. In affirming the order of the trial court, the Supreme Court said (pp 453–454) :

> "At common law an employee in the general employment of one person may, with his consent, be loaned to another for the performance of special work and become the employee of the person to whom he is loaned while performing such special service, and this principle of law has been applied to workmen's compensation cases. . . . It is said that the test to determine whether the injured person is the employee of the general employer, or of the special employer, is whether the master has resigned control of the servant for the time being, in a work in which the servant was engaged at that time."

Also, on pages 455–456:

> "There being no dispute about the facts, it becomes a question of law to be determined whether they

217

come within the principle of loaned employees, as a matter of law and not as a matter of fact.

"Determining the question involved is not one so simple as deciding whether the employee receives his money directly from the company for which the work is being done, or through another. The question is, is he doing an essential part of the work under the control of the particular employer? The details of the manner in which it is accomplished are immaterial. In the instant case Bagdonas was requested by the operator of the hoist to assist him. While these men came to the Frigidaire plant under the directions of the straw boss, the personnel of Frigidaire told them what to do, either directly or through the straw boss, and they followed the directions thus given.

"The evidence shows the principal purpose of the straw boss was to collect the time checks, and transport the men back and forth, and relieve Frigidaire of employees whose work did not suit. We think this is a case which comes clearly within the so-called 'loaned employee' rule, whereby the borrowing employer becomes liable as an employer under the Workmen's Compensation Act in case of death or injury."

Plaintiff contends that American Stevedores was overruled by Gundich v. Emerson-Comstock Co., 21 Ill2d 117, 171 NE2d 60 (1961), and that the pronouncements of Gundich are controlling here.

In Gundich v. Emerson-Comstock Co., the plaintiff was an employee of a general contractor engaged in construction work. A coemployee of the plaintiff was signalling a crane operator in the movement of steel beams when the plaintiff was injured. The crane operator was employed by defendant Emerson-Comstock Co., and it made the contention that the crane operator, at the time

218

of the occurrence, was an employee of plaintiff's employer under the "loaned servant" doctrine. The Supreme Court, in reversing a judgment for the defendant, said (p 123):

> ". . . we recognize that the criteria reiterated in the Illinois case law for the existence of the master-servant relationship is the right to control, which includes the power of discharge. . . . We also recognize that where an employee is sent by his general employer to another for the performance of special work, the test whether he becomes the employee of the person to whom he is sent depends upon whether he becomes wholly subject to that person's control and freed during such time from the direction and control of his master. (Merlo v. Public Service Co. of Northern Illinois, 381 Ill 300.) This presents a question of fact for the jury, which must weigh such factors as the matter of hiring, the mode of payment, the right to discharge, and the manner of direction of the services."

Plaintiff also cites the comments on the Gundich opinion made in Angerstein, Illinois Workmen's Compensation, Vol 1, 1962 Pocket Part, pp 56–57, where it is said:

> "In Gundich v. Emerson-Comstock Co., 1961, 21 Ill 2d 117, 171 NE2d 60, in a well-reasoned and comprehensive opinion in which reference was made to numerous supporting authorities, the court fortunately and correctly recognized the criteria reiterated in the Illinois case law that for the existence of the master-servant relationship there must be the right to control, which includes the *right to discharge*.
>
> ". . .
>
> "The court's clarifying and scholarly opinion in the cited case was long overdue because in American

Stevedores Co. v. Industrial Commission, 1951, 408 Ill 449, 97 NE2d 325 and also in Henry v. Industrial Commission, 1952, 412 Ill 279, 106 NE2d 185, the court chose not only to ignore the *right to discharge* test of the employer-employee relationship but also chose to substitute its judgment for that of the Industrial Commission on questions involving the employer-employee relationship.

". . .

"It is interesting to students of law to note that in the Henry case the court attempted to justify its decision by reference to the American Stevedores Co. case; also, it is of significant interest that in the cited Gundich v. Emerson-Comstock Co. case where the applicable rules of law were correctly stated, no reference was made to either Henry or American Stevedores Co. This omission is quite understandable because reference to the two cases would not have been at all helpful to the court in arriving at the correct conclusion except possibly to illustrate legally unsupportable conclusions."

Plaintiff argues that defendants in their brief attempt to "grant unto themselves the power to fire Erkard." Plaintiff asserts that the only palpable evidence upon this point in the record (plaintiff's counteraffidavit) states:

4. That no one but Nugents American Contractors, Inc. had the right to discharge or fire him [plaintiff]."

Plaintiff further argues that section 138.1(a)4, which provides that the liability of loaning and borrowing employers for workmen's compensation benefits shall be joint and several, was intended "only to provide that an injured workman receives benefits under the Workmen's Compensation Act. . . . and if the borrowing employer

does not pay the benefits, the loaning employer shall pay them."

We are not persuaded, as asserted by plaintiff, that the Gundich case "in effect overrules the American Stevedores case." The operative facts were not similar. Our conclusion is supported by pronouncements made in Raymond Concrete Pile Co. v. Industrial Commission, 37 Ill2d 512, 229 NE2d 673 (1967), where it is said (p 516):

> "In identifying the employer of a loaned employee the dominant circumstance has been the right to control the manner in which the work is to be done. (See e. g. American Stevedores Co. v. Industrial Com., 408 Ill 449, 454; Fransen Construction Co. v. Industrial Com., 384 Ill 616; Allen-Garcia Co. v. Industrial Com., 334 Ill 390.) Stated in more abstract terms, the most significant inquiry has concerned the extent to which the loaning employer delegated to the borrowing employer the right to control the manner of doing the work. Often the determination must be made on the basis of inferences from evidence that bears only indirectly upon that issue. In this case the evidence bears directly upon the issue, but it will support conflicting inferences."

Applying the guidelines of American Stevedores and Raymond Concrete Pile Co. to the instant situation, the undisputed facts show no conflicting inferences and present a question of law not a question of fact. Nugents had resigned full control of plaintiff for the time being, and plaintiff was doing all of his work under the direction and control of Sears. Although Nugents was the selecting agency to pick the men and the conduit through which the men were paid, it is undisputed and clearly appears that Sears had "the right to terminate the relationship," (Merlo v. Public Service Co., 381 Ill 300, 319, 45 NE2d 665 (1943)), and to direct plaintiff to report back

221

to Nugents in the event Sears deemed it necessary or desirable. We conclude that the Sears right of dismissal of plaintiff from their work was the equivalent of the "right to discharge."

As there was no genuine issue as to any material fact but a question of law only, the trial court was correct in entering summary judgment for defendants, and the instant judgment appealed from is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.