**Darren BLISS, Plaintiff,**

v.

**ERNST HOME CENTER, INC., a Washington Corporation, dba ERNST HOME CENTER, Defendant.**

**Civ. No. 93–NC–138W.**

United States District Court,
D. Utah,
Northern Division.

Nov. 7, 1994.

---

Edward T. Wells, Robert J. DeBry & Associates, Salt Lake City, UT, for plaintiff.

Anne Swenson, Snow, Christensen & Martineau, Salt Lake City, UT, for defendant.

## ORDER DENYING AND GRANTING MOTIONS FOR SUMMARY JUDGMENT

WINDER, Chief Judge.

This matter is before the court on plaintiff's and defendant's cross-motions for summary judgment on the issue of whether plaintiff's complaint is precluded by Utah's workers' compensation statute. A hearing on both motions was held on September 9, 1994. Plaintiff Darren Bliss [1] ("Bliss") was represented by Edward T. Wells. Defendant Ernst Home Center ("Ernst"), was represented by Anne Swenson. Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the various motions. Now being fully advised, the court enters the following memorandum decision and order.

### I. *BACKGROUND*

This action arises from an injury suffered by Bliss while he was working on Ernst's premises. On November 30, 1990, Ernst requested a temporary employee. Earlier that same year, Bliss had applied to and was hired by Kelly Temporary Services ("Kelly"). Although Bliss now claims that he never considered himself to be an employee of Ernst, he had the option to refuse any assignment offered to him by Kelly. In response to Ernst's request, Kelly sent Bliss to the Ernst store located at 451 West 1500 North in Layton, Utah. Ernst directed Bliss to perform work on a rooftop. While attempting to descend from the roof after com-

---

1. Mr. Bliss' first name appears as "Darren" in the caption of all court documents, but the plaintiff apparently spells it "Darrin." (*See* Acknowledgment of ADR Option).

pleting the assigned task, Bliss fell to the ground and was injured.

The essential facts relating to the relationship of Bliss, Kelly, and Ernst are undisputed. Ernst is responsible for supervising Kelly's temporary workers while they are on assignment at Ernst. Thus, at the time of his accident, Bliss was acting under the sole direction and control of Ernst. The financial arrangement between Kelly and Ernst dictates that Ernst pay a fee for each hour that a temporary employee works. Wages earned by Kelly's employees vary depending on where they work. Kelly deposits these payments in a general account. The workers' salary, workers' compensation insurance, and other employee benefits or overhead expenses are then paid from that fund leaving the surplus as Kelly's profit. Bliss has received workers' compensation benefits which have been paid solely by Kelly's workers' compensation carrier. Bliss now brings tort and contract claims against Ernst.[2]

## II. STANDARD OF REVIEW

In reviewing a motion for summary judgment a court must determine whether, in the absence of a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Thompson v. Dulaney*, 838 F.Supp. 1535 (D.Utah 1993). "Whether a worker is an employee within the meaning of the [workers'] compensation laws requires the application of a statutory standard to the facts." *Bennett v. Industrial Comm'n*, 726 P.2d 427, 429 (Utah 1986). Where the essential facts are undisputed, a court may deter-

mine as a matter of law the plaintiff's employment status in the context of the workers' compensation statute's exclusive remedy provision. *Ghersi v. Salazar*, 883 P.2d 1352, ——, No. 930243, 1994 WL 593196, at *1 (Utah 1994).

## III. ANALYSIS

Bliss' ability to proceed with his civil claims is governed generally by Utah's Workers' Compensation Act, and more specifically by the exclusive remedy provision of that statute.[3] Utah Code Ann. § 35-1-60 (Cum.Supp.1994). The statute does not expressly address the situation where an employer obtains an employee from a temporary service. The Utah Supreme Court, however, has recently treated this issue in *Ghersi v. Salazar*, 883 P.2d 1352 (Utah 1994).[4]

### A. The Statute

The exclusive remedy provision, in pertinent part, reads:

The right to recover compensation pursuant to provisions of this title for injuries sustained by an employee ... shall be the exclusive remedy against the employer ... and the liabilities of the employer imposed by this act *shall be in place of any and all other civil liability whatsoever* ... on account of any accident or injury or death, in any way contracted, sustained, aggravated, or incurred by the employee in the course of ... his employment....

**2.** Bliss' contract theory asserts that he is a third-party beneficiary to a contractual agreement between Ernst and Kelly that imposes particular limits on the scope of labor to be performed by temporary workers.

**3.** Bliss also argues that dismissal of his action would violate the equal protection and "open courts" provision of the Utah Constitution. *See Utah Const.* art. I, §§ 11, 24. However, he fails to demonstrate that the exclusive remedy provision of the workers' compensation statute operates in an impermissibly discriminatory fashion or that it forecloses a constitutionally guaranteed avenue of remedy.

**4.** *Ghersi* is virtually indistinguishable in its underlying facts. In that case:

Adia Personnel Services, Inc. ("Adia"), a temporary labor service, contracted with defendant Huish to provide Huish with temporary employees. Huish paid Adia an hourly fee for each temporary employee, and Adia compensated the temporary employee directly at a lesser hourly rate. Pursuant to the agreement between Adia and Huish, Adia carried workers' compensation insurance on all temporary employees provided to Huish. The difference between the rate Huish paid Adia and the rate Adia paid the temporary employee included an allowance for workers' compensation insurance premiums. Huish was entitled to dismiss from its employment any temporary employee with whom it was dissatisfied, but it had no authority to terminate the employee's relationship with Adia.

*Ghersi*, at 1353.

Utah Code Ann. § 35–1–60 (Cum.Supp.1994) (emphasis added).

This standard is, at least on its face, relatively straightforward. If Bliss was an "employee" and Ernst was his "employer,"[5] his claims are barred and he is limited to the compensation provided by the statute itself. The term "employer" is defined as "each person ... who regularly employs one or more workers or operatives in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written." *Id.* § 35–1–42(2). An "employee" is "each person in the service of any employer, as defined in Section 35–1–42 ... under any contract of hire, express or implied, oral or written ... but not including any person whose employment is casual and not in the usual course of the trade, business, or occupation of [the] employer." *Id.* § 35–1–43(1)(b). There is no question (and Bliss does not argue otherwise) that Ernst qualifies as an employer in the general sense, or that Bliss performed work in the usual course of Ernst's business. For the purposes of the parties' motions for summary judgment, then, the essential question is whether Bliss was "in the service of" Ernst "under any contract of hire."

### B. Case Law

That question invokes three issues in reference to this case: (1) whether, under the exclusive remedy provision of the workers' compensation statute, an employee may have more than one employer; (2) whether such an employer-employee relationship existed between Bliss and Ernst; and (3) whether an employer-employee relationship necessarily precludes Bliss' negligence action in light of recent amendments to the workers' compensation statute permitting suits against statutory employers.

**5.** Although there are well-developed common law definitions for these terms, the legislative origin and context of workers' compensation requires a more specialized examination—one focusing on the particular history and policy rationales underlying the various provisions of the workers' compensation statute.

**6.** Professor Arthur Larson, in his treatise on workers' compensation, concurs with this posi-

### 1. More than One Employer

With respect to the first question, the Utah Supreme Court has explicitly acknowledged that "[a]n employee, for the purpose of [workers'] compensation, may have two employers." *Kinne v. Industrial Comm'n,* 609 P.2d 926, 928 (Utah 1980). Either employer may invoke the exclusive remedy provision if an employer-employee relationship (as that relationship is understood by the statute) existed at the time of the injury to the employee. *Ghersi,* at 1355; *Bambrough v. Bethers,* 552 P.2d 1286, 1289 (Utah 1976).

### 2. Employer–Employee Relationship

As for the second question, there are a number of factors which courts may examine to determine whether an employer-employee relationship exists. Bliss identifies certain indicia of an employment relationship and claims they are determinative. Most notably, he asserts that because Ernst did not directly issue his wages or arrange for workers' compensation, Ernst is not his employer. These elements of the employment relationship, however, are of little relevance to the fundamental issues surrounding workers' compensation. The route of payment is inconsequential in comparison to the question of who originally paid the wages. *Deseret Architects & Eng'rs v. Industrial Comm'n,* 21 Utah 2d 163, 442 P.2d 925, 926 (1968). Kelly and Ernst agreed that Kelly would issue Bliss' wages. This responsibility included workers' compensation insurance. Ernst could easily arrange for another business to handle its regular payroll and the various accompanying mandatory deductions and payments for tax withholding and insurance in a similar manner. Simply because another entity takes on the administrative responsibilities associated with a statutory duty does not significantly alter or impact the fundamental employment relationship.[6]

tion, asserting that "[t]he element of who pays the employee shrinks into comparative insignificance in lent-employee problems, because the net result is almost invariably that the special employer ultimately pays for the services received and the employee ultimately gets his wages." *Arthur Larson, Larson's Workmen's Compensation Law* § 48.30 (Desk ed. 1994).

Bliss argues, however, that the contractual shift in responsibility is itself a reason for refusing to grant Ernst the protection of the exclusive remedy provision.[7] The attempt to avoid the burden, in other words, should invoke an equitable principle denying the benefits associated with the burden. Otherwise, asserts Bliss, Ernst receives the best of both worlds, avoiding insurance payments yet claiming the benefit of the exclusive remedy provision. This argument has a visceral appeal, but is nonetheless misplaced. Bliss did not need double insurance coverage for his time at Ernst's store. So long as Ernst and Kelly made a legitimate arrangement to insure Bliss, the purposes of the statute were fulfilled.[8] Ernst ultimately paid for the workers' compensation coverage even though Kelly processed those payments through its own carrier.

Bliss also observes that he was not hired through a formal interview process. The "hiring" of an employee, however, need not be formal to establish an employment relationship. Although Bliss was not "hired" in the sense that he was personally interviewed and selected by Ernst, the relationship between Bliss and Ernst was essentially voluntary, with both parties agreeing that Bliss would perform a particular service under Ernst's supervision.

Rather than focus on these tangential elements of employment status, the Utah Supreme Court in *Ghersi* adopted the analysis proffered by *Arthur Larson, Larson's Workmen's Compensation* § 48 (Desk ed. 1994). *See Ghersi,* at 1356–57. Professor Larson addresses the issue of temporary employees under the rubric of "lent employees and dual employment." In a lent employee situation, there are two employers. A "general" employer initially hires the employee and then directs the employee to temporarily perform work for a "special" employer.

■ Larson offers the following test for determining special employer status:

When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:

(a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

(c) the special employer has the right to control the details of the work.

*Larson's Workmen's Compensation* § 48.

■ With respect to the first factor, Bliss contends that he never subjectively consented to becoming an "employee" of Ernst. Bliss observes that Larson's treatise states that there must be a "deliberate and informed consent by the employee before employment relation will be held a bar to common law suit." *Id.* § 48.12. However, Professor Larson also explains that "consent may be inferred from the employee's acceptance of [a] special employer's control and direction." *Id.* § 48.15. Hence, what is important is not subjective consent, but rather an objectively manifested consent to the employment relationship as that relationship is understood by the workers' compensation statute. *Ghersi,* at 1357. Bliss did in fact impliedly consent to the general terms of the employment relationship. Specifically, it was understood that the work to be performed

---

7. Notably, however, Bliss does not assert that Ernst and Kelly's arrangement violated the statute. Failure by an employer to provide workers' compensation insurance not only exposes the employer to civil negligence actions, but shifts the burden of proof to the employer, and deprives the employer of many common law defenses. Utah Code Ann. § 35–1–57 (Cum.Supp. 1994). The employer may also face injunctive and even criminal penalties. *Id.* §§ 35–1–46 to –46.30.

8. As a general matter, contractual arrangements between temporary services and their client employers are of limited relevance. Workers' compensation coverage is a mandatory statutory duty. *Lovato v. Beatrice Foods,* 22 Utah 2d 371, 453 P.2d 692, 692 (1969). Hence, the contract between an employer and a temporary service is pertinent only insofar as it changes the fundamental employer-employee relationship, altering statutory obligations in the process. Other attempts to shift liabilities (such as vicarious employer responsibility for torts committed by employees) bear little relation to the issue of workers' compensation. "[C]ompensation law is concerned not with injuries *by* the employee in his detailed activities, but with injuries *to* him...." *Larson's Workmen's Compensation* § 43.42.

was in furtherance of Ernst's daily business and would be carried out under Ernst's direction and control in the same manner as with other Ernst employees. *See id.* Thus, Bliss' assertion that he did not understand himself to be an "employee" is conclusory.[9] The criteria which govern employment status are those listed by the statute and Utah case law, and a subjective belief about one's status is not among them.

The second factor—that "the work being done is essentially that of the special employer," is also met. Kelly had no distinct interest in the specific nature of Bliss' work. Indeed, the purpose of temporary employment services is to provide workers in conformity with the particular needs of the client employer. *See Ghersi,* at 1357. Hence, the work Bliss performed was essentially that of Ernst.

Larson's third factor—"right to control the details of the work"—also weighs in favor of a finding of employee status.[10] In this case, it is undisputed that Ernst supervised and controlled Bliss' activities while he was on site. As a result, all three of Larson's criteria are met, and Bliss was an employee of Ernst for purposes of the workers' compensation statute.[11]

---

9. There is a critical distinction between the subjective labels people apply to themselves and a statutory term of art embodying objective legal criteria. Bliss' subjective understanding of his obligations and duties while on the job at Ernst pertains to the intent of the parties, and in that sense may affect the employment relationship. But in this case, Bliss does not contest the fundamental elements comprising his agreement to work for Ernst. Rather, he simply argues that, in his own mind, he did not believe those elements made him an "employee."

10. Although Larson states that the most relevant factor is "the nature of the claimant's work in relation to the regular business of the employer," *Larson's Workmen's Compensation* § 43.50, previous Utah cases in other contexts have identified right to control as the most significant factor. *Bennett v. Industrial Comm'n,* 726 P.2d 427, 429–30 (Utah 1986); *see also Bethers,* 552 P.2d at 1291 (holding right of control determinative). Courts in other jurisdictions likewise generally treat control of the employee as the most significant factor. *Thompson v. Grumman Aerospace Corp.,* 585 N.E.2d 355, 357 (N.Y.1991); *Denison v. Haeber Roofing Co.,* 767 S.W.2d 862, 864–65 (Tex.Ct.App.1989); *Santa Cruz Poultry Inc. v. Superior Court,* 194 Cal.App.3d 575, 580–81 (1987); *Whitehead v. Safway Steel Prod. Inc.,* 304 Md. 67, 497 A.2d 803, 809 (1985); *Highway Ins. Co. v. Sears, Roebuck & Co.,* 92 Ill.App.2d 214, 235 N.E.2d 309, 312 (1968).

11. On the issue of temporary services, Larson states:
   if the function performed by the general employer is more in the nature of an employment agency, and particularly, if he merely arranges for labor without heavy equipment, the worker becomes the employee of the special employer. For example, employers obtaining workers from Manpower, Inc., and similar agencies have ordinarily been held to assume the status of special employer.
*Larson's Workmen's Compensation* § 48.23; *see also Marlow v. Mid South Tool Co.,* 535 So.2d 120, 123 (Ala.1988); *Nation v. Weiner,* 145 Ariz.

414, 701 P.2d 1222, 1227 (Ct.App.1985); *Daniels v. Riley's Health & Fitness Centers,* 310 Ark. 756, 840 S.W.2d 177, 178–79 (1992); *Santa Cruz Poultry, Inc. v. Superior Court,* 194 Cal.App.3d 575, 239 Cal.Rptr. 578, 579–81 (1987); *Fox v. Contract Beverage Packers, Inc.,* 398 N.E.2d 709, 712 (Ind.Ct.App.1980); *In re Galloway,* 354 Mass. 427, 237 N.E.2d 663, 665–66 (1968); *Danek v. Meldrum Mfg. & Eng'r Co.,* 312 Minn. 404, 252 N.W.2d 255, 259–60 (1977); *Whitehead v. Safway Steel Prod., Inc.,* 304 Md. 67, 497 A.2d 803, 809–10 (1985); *Goodman v. Sioux Steel Co.,* 475 N.W.2d 563, 564 (S.D.1991); *Blacknall v. Westwood Corp.,* 89 Or.App. 145, 747 P.2d 412, 414 (1987). Bliss cites several cases in opposition to this majority position, but only one of them effectively supports his argument. In *Novenson v. Spokane Culvert & Fabricating Co.,* 91 Wash.2d 550, 588 P.2d 1174, 1176–77 (1979) (en banc), the Washington Supreme Court, in a five to four vote, held that temporary employees are not precluded from bringing negligence suits against the employers to which they are assigned. The other cases cited by Bliss are distinguishable or inapplicable. *French v. Grove Mfg. Co.,* 656 F.2d 295, 296–97 (8th Cir.1981), involved a company which leased equipment and provided three laborers to operate it. One laborer injured one of the other two. The appellate court never addressed the issue of employee status on the merits, remanding the case for various factual determinations. *Levinson v. Payson,* 73 Mich.App. 655, 252 N.W.2d 567, 568–69 (1977), involved a home care nurse provided to a family. *Hill v. Erdle Perforating,* 53 A.D.2d 1008, 386 N.Y.S.2d 265, 266 (1976), merely held that employee status is a question of fact (and even the continued viability of that ruling is in doubt given the subsequent holding in *Thompson v. Grumman Aerospace Corp.,* 78 N.Y.2d 553, 578 N.Y.S.2d 106, 108, 585 N.E.2d 355, 357 (1991)). *Thornton v. Paktank Florida, Inc.,* 409 So.2d 31, 32–33 (Fla.Ct.App.1982) did in fact support Bliss' position. That case, however, was overruled by *Booher v. Pepperidge Farm, Inc.,* 468 So.2d 985, 985 (Fla.1985), and the Florida legislature has expressly included clients of temporary services

### 3. Effect of Amendment Allowing Suit Against Statutory Employer

■ Bliss argues, nonetheless, that a general finding of employee status does not necessarily afford Ernst the protection of the exclusive remedy provision. In making this assertion, he relies upon a line of cases imposing a duty on certain employers for workers' compensation, yet exposing the employers to tort liability as well. Those cases address the issue of so-called "statutory employers" [12] who hire contractors and/or subcontractors, and refer to the following statutory provisions:

If any person who is an employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control ... the contractor, all persons employed by him, all subcontractors under him, and all persons employed by any of these subcontractors, are considered employees of the original employer.

Utah Code Ann. § 35–1–42(6)(a) (Cum.Supp. 1994).[13]

For the purposes of this section and notwithstanding the provisions of Section 35–1–42, the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-employer relationship with the injured or deceased employee at the time of his injury or death.

Id. § 35–1–62(4).[14]

Read in conjunction, these two provisions require, for example, a general contractor hiring subcontractors to ensure that employees of the subcontractor are covered by workers' compensation, yet also allows those same employees to bring a traditional negligence action against the general contractor. See Pate v. Marathon Steel Co., 777 P.2d 428, 430–31 (Utah 1989) [15]; Jacobsen v. Industrial Comm'n, 738 P.2d 658, 660 (Utah Ct.App.

---

within the exclusive remedy protection of Florida's workers' compensation statute. Fla.Stat. § 440.11(2) (1993).

**12.** This term is somewhat misleading. Because workers' compensation is a legislative rather than a common law construct, all employers defined under the statute are in that sense "statutory." As a result, Utah courts have not always clearly drawn the distinction between employers denied exclusive remedy protection by 35–1–62(4), and other employers defined generally under the statute. Pate v. Marathon Steel Co., 777 P.2d 428, 431 (Utah 1989), for instance, appears to say that all employers specially designated by Section 35–1–42 are "statutory" employers as opposed to "immediate or common law" employers. This is a confusing, if not useless, distinction since Section 35–1–42 purports to define all employers for purposes of the statute. A number of subsequent cases have likewise implied that the "statutory" employer category reaches beyond the group of employers specifically enumerated by Subsection 62(4), despite the fact that there is no language inferring any legislative intent to that end. A possible source of the ambiguity is careless reading of Bennett v. Industrial Comm'n, 726 P.2d 427, 431 (Utah 1986). Bennett referred to "statutory employers," but expressly limited application of that term to a "portion of § 35–1–42." The portion identified is currently contained in Subsection 42(6)(a) and is there limited to employers utilizing contractors and subcontractors. 726 P.2d at 431; see also Jacobsen, 738 P.2d at 660. In any event, recent cases have held that exclusive rem-

edy protection is not available to "statutory employer[s] who [have] not been required to pay workers' compensation benefits." Bosch v. Busch Dev., Inc., 777 P.2d 431, 432 (Utah 1989); see also Ghersi, at 1355. Ernst paid Bliss' workers' compensation payments, albeit indirectly. See Ghersi, at 1358. Thus, regardless of whether Ernst is a "statutory" employer (as that term is understood by Pate and Ghersi), Ernst is entitled to exclusive remedy protection. Id.

**13.** The purpose of this provision is to ·protect employees of uninsured subcontractors by imposing ultimate liability on the presumably more responsible general contractor. It also prevents employers from circumventing the statute by means of dispersing their operations amongst subcontractors. Bennett, 726 P.2d at 431.

**14.** This section was included by amendment in 1975. Prior to that time, Utah courts had consistently interpreted the exclusive remedy provision in lockstep with the liability provision. In other words, if an employer was liable for workers' compensation benefits, that employer was necessarily afforded the protection of the exclusive remedy provision. See Pate, 777 P.2d at 429.

**15.** Pate expressly reserved the question of the "amenability of a statutory employer to suit when it has, in fact, been required to pay compensation to the injured worker because of default or failure of the immediate employer to do so." 777 P.2d at 431.

1987). However, the categories enumerated by § 35–1–62(4) are clearly delineated and limited to "subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-employer relationship." Clients of temporary services are not included. Therefore, because of the general statutory employment relationship which existed between Ernst and Bliss, and because Ernst does not fall within the narrow exception afforded by Utah Code Ann. § 35–1–62(4), Ernst is protected by the exclusive remedy provision and Bliss is limited to the coverage afforded by the Workers' Compensation Act.

Accordingly, based on the foregoing reasons, and good cause appearing,

IT IS HEREBY ORDERED as follows:

1. Bliss' Motion for Partial Summary Judgment is denied.

2. Ernst's Motion for Summary Judgment is granted.

3. No costs are awarded.