Dante GHERSI, Plaintiff and Appellant,

v.

Joe SALAZAR, and Huish Detergent, Inc., formerly Huish Chemical Company, a Utah Corporation, Defendants and Appellees.

No. 930243.

Supreme Court of Utah.

Oct. 28, 1994.

---

Edward T. Wells, Murray, for plaintiff.

Gary B. Ferguson, Kurt M. Frankenburg, Salt Lake City, for defendants.

STEWART, Associate Chief Justice:

Dante Ghersi appeals from a summary judgment holding that his personal injury action against Huish Detergent, Inc. ("Huish"), and its employee, Joe Salazar, was barred by Utah Code Ann. § 35–1–60, the exclusive remedy provision of the Utah Workers' Compensation Act (the "Act"). We affirm.

## I

The facts are undisputed. Adia Personnel Services, Inc. ("Adia"), a temporary labor service, contracted with defendant Huish to provide Huish with temporary employees. Huish paid Adia an hourly fee for each temporary employee, and Adia compensated the temporary employee directly at a lesser hourly rate. Pursuant to the agreement between Adia and Huish, Adia carried workers' compensation insurance on all temporary employees provided to Huish. The difference between the rate Huish paid Adia and the rate Adia paid the temporary employee included an allowance for workers' compensation insurance premiums. Huish was entitled to dismiss from its employment any temporary employee with whom it was dissatisfied, but it had no authority to terminate the employee's relationship with Adia.

Dante Ghersi obtained employment with Adia in April 1989. In the ensuing months, Adia placed Ghersi with several different companies. Ghersi could accept or reject any assignment given him by Adia. In late April or early May 1989, Ghersi accepted an assignment from Adia to work at Huish. Huish assigned Ghersi to work in a warehouse loading boxes of detergent from a conveyor belt onto a pallet. Huish employees supervised and controlled Ghersi in his work, telling him when, where, and how to work.

While Ghersi was working in Huish's warehouse, a forklift driven by Huish employee Joe Salazar backed over Ghersi's right foot and lower leg. Ghersi was paid workers' compensation benefits from Adia's workers' compensation insurer for the injuries he suffered working for Huish. Ghersi then filed a personal injury action against Huish and Salazar for negligence in the operation of the fork lift. The district court granted defendants' motion for summary judgment on the ground that Huish was an employer of Ghersi and, therefore, under Utah Code Ann. § 35–1–60, both Huish and Salazar were immune from a common law personal injury action and Ghersi's sole remedy was under the Act.

## II

As a preliminary matter, Ghersi contends that whether an employment relationship existed between Huish and himself is a question of fact that may not be disposed of on summary judgment. However, the facts concerning the terms and manner of employment are undisputed here. The nature of the relationship, therefore, is an issue of law that may be decided by the court. *Whitehead v. Safway Steel Products, Inc.*, 304 Md. 67, 497 A.2d 803, 806 (1985); *see Bennett v. Industrial Comm'n*, 726 P.2d 427, 429 (Utah 1986); *Rustler Lodge v. Industrial Comm'n*, 562 P.2d 227, 228 (Utah 1977).

Ghersi's principal assertion is that the Act does not provide immunity to Huish and Salazar because Huish was a "statutory employer" under § 35–1–42 who did not provide workers' compensation benefits. Ghersi contends that Huish and Salazar are not protected by the Act because a "statutory employer" is liable for a common law personal injury action under § 35–1–62 and our ruling in *Pate v. Marathon Steel Co.*, 777 P.2d 428 (Utah 1989), at least if the statutory employer did not pay workers' compensation premiums, as in this case. The issue is a matter of first impression in this state.

Under the Act, an employer's liability to employees for work-related injuries is limited to workers' compensation under the Act.[1] Nonemployers, however, may be sued for

---

1. Section 35–1–60 provides:

The right to recover compensation pursuant to the provisions of this title for injuries sus-

common law damages for injuries to workers caused by the negligence of the nonemployer.[2] Adia paid workers' compensation benefits to Ghersi as his general employer. Consequently, Ghersi's exclusive remedy against Adia is workers' compensation. Whether Huish was also an employer of Ghersi and paid workers' compensation insurance premiums determines whether Ghersi is precluded from asserting a negligence action against Huish.

■ An employee may have two employers for purposes of the Act. *Kinne v. Industrial Comm'n*, 609 P.2d 926, 928 (Utah 1980); *Blacknall v. Westwood Corp.*, 307 Or. 113, 764 P.2d 544, 547 (1988). Even though Adia was Ghersi's employer and paid workers' compensation benefits, that does not mean that Huish cannot also be Ghersi's employer.

■ Ghersi argues that Huish was his statutory employer under § 35–1–42 of the Act and that Adia was similar to a subcontractor. As a general proposition, that provision allows workers to recover workers' compensation benefits from persons who are not actual employers but are statutory employers. Section 35–1–42 provides in part:

> If any person who is an employer procures any work to be done wholly or in part for him by a contractor over whose work he retains supervision or control, and

this work is a part or process in the trade or business of the employer, the contractor, all persons employed by him, all subcontractors under him, and all persons employed by any of these subcontractors, are considered employees of the original employer.

Utah Code Ann. § 35–1–42(5) (1988) (current version at § 35–1–42(6)(a) (Supp.1994)). Thus, an "employer" who engages a contractor "over whose work he retains supervision or control, and *such work is a part or process in the trade or business of the employer*" is deemed in law to be the "employer" of the contractor, the contractor's employees, the contractor's subcontractors, and their employees. *Pinter Constr. Co. v. Frisby*, 678 P.2d 305, 307 (Utah 1984) (emphasis added). Ghersi's argument, however, is that he can maintain an action for damages against Huish, even though Huish is a statutory employer, because workers' compensation premiums were paid by Adia, not by Huish,[3] and therefore, under *Pate v. Marathon Steel Co.*, 777 P.2d 428, 431 (Utah 1989), he can sue Huish for damages. *Pate* held that it is only the "immediate, or common law employer, who actually pays compensation, and its officers, agents, and employees [who] are shielded by the exclusive remedy immunity conferred by section 35–1–60" and that under § 35–1–62 [4] an injured worker can maintain an action for damages against a statutory

---

tained by an employee ... *shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent or employee of the employer* and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee ... on account of any accident or injury or death ... incurred by the employee in the course of or because of or arising out of his employment, *and no action at law may be maintained against an employer or against any officer, agent or employee of the employer based upon any accident, injury or death of an employee.*
Utah Code Ann. § 35–1–60 (Supp.1994) (emphasis added).

2. Section 35–1–62 specifically preserves workers' negligence actions against such nonemployers as "subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-em-

ployer relationship with the injured or deceased employee at the time of his injury or death." Utah Code Ann. § 35–1–62 (Supp.1994). *See generally Pate v. Marathon Steel Co.*, 777 P.2d 428, 431–33 (Utah 1989).

3. Ghersi bases his assertion that Huish is a statutory employer on § 35–1–42(3)(a) (Supp.1994). That provision states, "The client company in an employee leasing arrangement ... is considered the employer of leased employees and shall secure workers' compensation benefits for them...." However, that provision was not enacted until 1992, three years after Ghersi's cause of action arose, and is inapplicable here.

4. Utah Code Ann. § 35–1–62 (Supp.1994) states:
   When any injury or death for which compensation is payable under this title shall have been caused by the wrongful act or neglect of a person other than an employer, officer, agent, or employee of the employer, the injured em-

employer who had not paid workers' compensation premiums. *Id.* at 431; *see also Bosch v. Busch Developments, Inc.,* 777 P.2d 431, 432 (Utah 1989).

■ Ghersi's characterization of Huish's legal status does not correctly reflect the true nature of the parties' relationship. A temporary labor service is not like a subcontractor. *See Word v. Motorola, Inc.,* 135 Ariz. 517, 662 P.2d 1024, 1026 (1983); *Nation v. Weiner,* 145 Ariz. 414, 701 P.2d 1222, 1225 (Ct.App.1985); *see also* Utah Code Ann. § 35–1–42(6)(a) (Supp.1994). Such a service does not perform any work for customers; it merely supplies or "loans" workers who are under contract to the service to work as an employee for a client. The work the employee performs is the work of the client. *Word,* 662 P.2d at 1026; *Weiner,* 701 P.2d at 1225. The relationships between a labor service, a "loaned" or temporary employee, and a temporary employer are different from statutory employer-employee relationships and different legal principles govern that relationship. 2A Arthur Larson, *Workmen's Compensation Law* § 72.31(c), at 14–245 to –246 (1993).

Almost without exception, courts have relied on the loaned employee doctrine to hold that the special employer of a temporary employee is an employer for workers' compensation purposes. *See, e.g., Capps v. N.L. Baroid–NL Industries, Inc.,* 784 F.2d 615, 617–18 (5th Cir.1986); *Huff v. Marine Tank Testing Corp.,* 631 F.2d 1140, 1144 (4th Cir. 1980); *Word,* 662 P.2d at 1027; *Danek v. Meldrum Mfg. & Eng'g Co., Inc.,* 312 Minn. 404, 252 N.W.2d 255, 260 (1977); *Wright v. Habco, Inc.,* 419 S.W.2d 34, 36 (Mo.1967);

*Shipman v. Macco Corp.,* 74 N.M. 174, 392 P.2d 9, 12 (1964); *Goodman v. Sioux Steel Co.,* 475 N.W.2d 563, 565 (S.D.1991); *Meka v. Falk Corp.,* 102 Wis.2d 148, 306 N.W.2d 65, 70–71 (1981).[5] The doctrine provides that if a labor service loans an employee to a special employer for the performance of work, then the employee, with respect to that work, is the employee of the special employer for whom the work or service is performed. *Danek,* 252 N.W.2d at 258; *see also* Restatement (Second) of Agency § 227 (1958). No public policy is subverted by this doctrine. *Jones v. Sheller–Globe Corp.,* 487 N.W.2d 88, 92 (Iowa Ct.App.1992).

The loaned employee doctrine has evolved to determine the rights and responsibilities of the parties under workers' compensation laws. Special terminology has been developed to describe the parties to this relationship. A temporary labor service is a "general employer"; a temporary employee is a "loaned" employee; and the business to which the employee is assigned is a "special employer." Here, Adia is a general employer, Ghersi the loaned employee, and Huish the special employer.

■ Professor Larson explains workers' compensation liability under the loaned employee doctrine as follows:

When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:

(a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

ployee ... may claim compensation and ... may also have an action for damages against such third person. . . . . .
For the purposes of this section and notwithstanding the provisions of Section 35–1–42, the injured employee or his heirs or personal representative may also maintain an action for damages against subcontractors, general contractors, independent contractors, property owners or their lessees or assigns, not occupying an employee-employer relationship with the injured or deceased employee at the time of his injury or death.

5. *See also Santa Cruz Poultry, Inc. v. Superior Court,* 194 Cal.App.3d 575, 239 Cal.Rptr. 578 (1987); *Stephens v. Oates,* 189 Ga.App. 6, 374 S.E.2d 821 (1988); *Fox v. Contract Beverage Packers, Inc.,* 398 N.E.2d 709 (Ind.Ct.App.1980); *Smith v. Kelly Labor Serv.,* 239 So.2d 685 (La.Ct. App.1970); *Anderson v. Texas Gulf, Inc.,* 83 N.C.App. 634, 351 S.E.2d 109 (1986); *Bennett v. Mid–South Terminals Corp.,* 660 S.W.2d 799 (Tenn.Ct.App.1983).

(c) the special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

1B Arthur Larson, *Workmen's Compensation Law* § 48.00, at 8–434 (1992); *see also Word,* 662 P.2d at 1027; *Danek,* 252 N.W.2d at 258; *Goodman,* 475 N.W.2d at 564. Huish is liable for workers' compensation and receives the Act's protection only if all three elements of this relationship existed and Huish satisfied its concomitant obligation to pay workers' compensation premiums.

■ The first element is that the loaned employee and the special employer entered into a contract of hire. Without a contract of hire, there can be no employment relationship for purposes of workers' compensation. 1B Larson, *supra* § 47.10, at 8–301 to –307; § 48.15, at 8–464; *see also* Utah Code Ann. § 35–1–42(2) (Supp.1994). This requirement ensures that the employee consents to the employment relationship with the special employer. The point is important because application of the loaned employee doctrine results in an employee's relinquishing the right to sue his special employer for common law negligence. *Danek,* 252 N.W.2d at 259 (citing 1B Larson, *Workmen's Compensation Law* § 48.12, at 8–440).

■ The contract need not be express; it may be inferred from the circumstances. *Bambrough v. Bethers,* 552 P.2d 1286, 1292 (Utah 1976); *see also Terry v. Read Steel Prods.,* 430 So.2d 862, 866 (Ala.1983); *Goodman,* 475 N.W.2d at 565. When an employee of a temporary labor service who has the right to accept or decline an assignment accepts an assignment, he enters into an implied contract of hire with the special employer. *See, e.g., Danek,* 252 N.W.2d at 260; *Wright,* 419 S.W.2d at 36; *Goodman,* 475 N.W.2d at 565; *Meka,* 306 N.W.2d at 70–71. *But see M.J. Daly Co. v. Varney,* 695 S.W.2d 400, 402 (Ky.1985) (employee expressly refused to consent to employment relationship); *Novenson v. Spokane Culvert & Fabricating Co.,* 91 Wash.2d 550, 588 P.2d 1174, 1177 (1979) (whether a temporary employee entered into a contract of hire with the special employer is a question of fact for the jury).

■ The district court correctly decided that Huish was Ghersi's employer because an implied contract existed between Ghersi and Huish. Ghersi knew when Adia hired him that he would be expected to work for Adia's various customers. Ghersi had the right to accept or refuse Adia's assignments. Ghersi impliedly entered a contract of hire with Huish by accepting the assignment to work for Huish, and by continuing to submit to Huish's supervision and control, Ghersi consented to work for, and was an employee of, Huish.

Second, the only work Ghersi did was that of the special employer, Huish. Adia had no work of its own to be performed; its sole business was to provide temporary labor to other businesses. Further, Huish's work was not a "part or process" of Adia's "trade or business." Thus, Huish could not be considered Adia's employee under § 35–1–42(5), as would be necessary for Ghersi to be able to sue Huish as a nonemployer.

Finally, Huish, as the special employer, had the right to control the details of Ghersi's work. When, where, and how Ghersi was to work was determined solely by Huish employees. Huish also had the right to discharge Ghersi if he did not perform satisfactorily. That Adia hired Ghersi, compensated him directly, and paid the expense of his workers' compensation did not give Adia the right to control the performance of his work at Huish. *See Danek,* 252 N.W.2d at 258.

Because all three elements of the loaned employee doctrine are satisfied, we conclude that Huish was Ghersi's special employer for purposes of workers' compensation.

■ Therefore, whether Huish is immune from suit under § 35–1–60 depends on whether workers' compensation benefits were provided through Huish. *Pate,* 777 P.2d at 431. Ghersi argues that Huish's

paying a fixed fee to a temporary personnel service did not constitute payment of workers' compensation benefits and that Huish itself had to pay the premiums directly to the insurer to be immune from suit. We disagree. Given the economic realities of employee leasing, we hold that the substance of the requirement is met. Huish paid an hourly fee to Adia with the understanding that a portion of the fee would be used to purchase workers' compensation insurance for the temporary employees. The agreement between Adia and Huish required Adia to carry workers' compensation insurance on all temporary employees placed with Huish. Huish, through its contract with Adia, provided workers' compensation coverage. *See generally St. Claire v. Minnesota Harbor Service, Inc.*, 211 F.Supp. 521, 528 (D.Minn.1962); *Terry v. Read Steel Prods.*, 430 So.2d 862, 865 (Ala.1983); *Blacknall v. Westwood Corp.*, 307 Or. 113, 764 P.2d 544, 547 (1988). Since both Adia and Huish could be liable under the Act, both are protected by it when they comply therewith. *Danek*, 252 N.W.2d at 260. Because Huish was a special employer and paid workers' compensation, Huish cannot be sued by Ghersi for damages.

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur.