Lester WALKER, Plaintiff and Appellant,

v.

U.S. GENERAL, INC., a Utah corporation, SOS Services, Inc., dba SOS Temporary Services, and John Does I through V, Defendants and Appellees.

Nos. 940134, 940286.

Supreme Court of Utah.

May 2, 1996.

ably drawn therefrom in the light most favorable to Walker. *Utah Dep't of Envtl. Quality v. Wind River Petroleum,* 881 P.2d 869, 872 (Utah 1994); *Thayne v. Beneficial Utah, Inc.,* 874 P.2d 120, 124 (Utah 1994).

## BACKGROUND

On May 17, 1989, SOS Temporary Services (SOS) contracted with General to provide a temporary employee to "do clean up work" and "assist a carpenter" at a construction site. On several prior occasions, SOS had provided General with temporary employees. General paid SOS an hourly rate for each temporary employee; the specific rate to be charged depended on the job classification and the skill required to perform the particular assignment. SOS would then compensate the temporary employee directly at a lesser rate. The difference between the two rates included an allowance for workers' compensation insurance premiums which SOS paid.

On prior occasions, SOS had informed General that it would not provide laborers to work at heights above twelve feet. Moreover, SOS had specifically refused to provide workers to General when informed that the worker would have to work at greater heights. When General requested a temporary employee on May 17, it did not indicate that it intended to use the laborer at a height above twelve feet.

Early in the day on May 17, SOS hired Walker to provide unskilled labor to General. Walker accepted the assignment and proceeded to the job site. Within minutes of his arrival, General's superintendent placed him on a scaffolding approximately sixteen feet in height. Soon thereafter, he fell to the ground, sustaining severe injuries which have rendered him permanently disabled and nonfunctional. SOS's insurer paid Walker workers' compensation benefits for his injuries.

Walker filed this personal injury action against General, alleging negligence, breach of contract, and gross negligence. General moved for summary judgment, arguing: "U.S. General was [Walker's] special employer at the time of his accident and is therefore immune from an action in negligence by its employee. Mr. Walker's exclusive remedy

Edward T. Wells, Albert W. Gray, West Valley City, for plaintiff.

H. James Clegg, John R. Lund, Julianne Blanch, Salt Lake City, for defendant U.S. General.

Timothy C. Houpt, E. Glen Nickle, Salt Lake City, for defendant SOS Services.

HOWE, Justice:

Plaintiff Lester Walker appeals from a summary judgment barring his personal injury action against defendant U.S. General, Inc. (General), under the exclusive remedy provision of the Utah Workers' Compensation Act (the Act), Utah Code Ann. § 35–1–60.

In reviewing the propriety of the summary judgment, we consider the evidence and all inferences that may be reason-

against his employers is the worker's compensation benefit." The trial court granted General's motion on the basis of its determination that the Act's exclusive remedy provision barred any recovery against General.

Walker appeals, contending that several material factual disputes exist which preclude summary judgment. Specifically, Walker asserts that questions of fact exist as to whether (1) a contract for hire existed between Walker and General, (2) General had the right to control Walker, (3) the injury occurred during the course of Walker's employment, and (4) General became Walker's special employer. Walker also argues that public policy mandates that this court hold General liable for his injuries because of General's failure to abide by SOS's height restriction.

■■■ Before turning to the particulars of Walker's appeal, a discussion of this court's decision in *Ghersi v. Salazar*, 883 P.2d 1352 (Utah 1994), is appropriate. In *Ghersi*, we addressed the rights and responsibilities of parties under workers' compensation in the context of a temporary labor service. We recognized that an employee may have two employers for purposes of the Act whereby "[a] temporary labor service is a 'general employer' . . . and the business to which the employee is assigned is a 'special employer.'" *Id.* at 1356. Moreover, we determined that a special employer will receive the Act's protection, i.e., immunity from all other civil liability,[1] if

> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.

*Id.* at 1356–57 (citing 1B Arthur Larson, *Workmen's Compensation Law* § 48.00, at 8–434 (1992)). We now address Walker's assignments of error in light of the above standard.

## CONTRACT OF HIRE

■■■ Walker contends that whether a contract of hire existed between General and himself is a question of fact which cannot be appropriately disposed of on summary judgment. However, we have specifically held that when "the facts concerning the terms and manner of employment are undisputed . . . [t]he nature of the relationship . . . is an issue of law that may be decided by the court." *Id.* at 1354.

■■■ The existence of a contract of hire is essential, for without it there can be no employment relationship for purposes of workers' compensation. *Id.* at 1357. Walker maintains that no contract existed because he did not subjectively consent to become General's employee. However, this court has held that the contract of hire need not be express but may be inferred from the circumstances. *Id.; Bambrough v. Bethers*, 552 P.2d 1286, 1292 (Utah 1976); Larson, *Worker's Compensation Law* § 48.15. In *Ghersi*, we specifically stated, "When an employee of a temporary labor service who has the right to accept or decline an assignment accepts an assignment, he enters into an implied contract of hire with the special employer." *Ghersi*, 883 P.2d at 1357. Accordingly, the critical determination is not whether Walker subjectively consented, but rather whether he objectively manifested consent to the employment relationship.

■■■ The facts are undisputed that (1) Walker knew he would be expected to work for various companies contracting with SOS for temporary help, (2) SOS told Walker not to accept any assignment that he could not

---

1. Section 35–1–60 of the Utah Workers' Compensation Act provides:

   The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer . . . and the liabilities of the employer imposed by this act shall be in place of any and all other civil liability whatsoever, at common

   law or otherwise, to the employee . . . on account of any accident or injury or death, in any way contracted, sustained, aggravated, or incurred by the employee in the course of or because of or arising out of his employment, and no action at law may be maintained against an employer . . . based upon any accident, injury, or death of an employee. . . .

   Utah Code Ann. § 35–1–60.

perform or was not comfortable with, and (3) Walker had the option of accepting or refusing any assignment. Walker chose to accept the job with General, reported to its construction site, and followed the directions of its foreman. Clearly, under those circumstances, Walker entered into a contract of hire with General. Walker's assertion that he did not consider himself to be General's employee is irrelevant. "The criteria which govern employment status are those listed by the [Act] and Utah case law, and subjective belief about one's status is not among them." *Bliss v. Ernst Home Center, Inc.,* 866 F.Supp. 1362, 1367 (D.Utah 1994).

Walker also contends that he was "mentally unstable" and thus unable to enter into a contract of hire. In determining whether a party is sufficiently competent to contract, we have stated that the test is whether " 'the mental facilities [were] so deficient or impaired that there was not sufficient power to comprehend the subject of the contract, its nature and its probable consequences, and to act with discretion in relation thereto, or with relation to the ordinary affairs of life.' " *Hatch v. Hatch,* 46 Utah 218, 230, 148 P. 433, 438 (1914) (citation omitted); *accord Jimenez v. O'Brien,* 117 Utah 82, 87, 213 P.2d 337, 339 (1949). Walker does not point to any references in the record that would support any inference that he was so impaired. His main support comes from his statement that at the time SOS hired him, he was "physically and intellectually impaired due to radiation therapy treatment for a form of brain disease at a very young age." Nonetheless, it is not contested that Walker was sufficiently capable of understanding that he would be working for SOS's clients under the clients' direction and control. Indeed, Walker accepted the assignment with General, arrived at the construction site, and proceeded to follow the instructions of General's foreman. Once he was on the scaffolding, he began following the instructions of the carpenter. Nothing supports the conclusion that Walker was so impaired as to negate his capacity to contract. Moreover, this argument is particularly dubious given that Walker was capable of entering into a contract of hire with SOS on the same day. Accordingly, we conclude that as a matter of law Walker was capable of entering into, and did in fact enter into, a contract of hire with General.

## RIGHT TO CONTROL

Walker next contends that General did not have the right to control him. Specifically, he maintains that because the contract between SOS and General prohibited SOS employees from being placed at heights above twelve feet, General did not have a right to control him above that height.

In analyzing "right to control" issues, this court has looked at whether the employer has the right to control the details of the work, such as where, when, and how the work is to be performed. *Ghersi,* 883 P.2d at 1357. Walker does not dispute that General had the right to control the details regarding where, when, and how its work was to be done. SOS informed its temporary employees to follow its clients' instructions as to how and where the work was to be conducted. Moreover, General was in fact controlling and supervising Walker when the accident occurred. Walker was ordered to ascend the scaffolding and assist the carpenter already working there, and Walker complied. Accordingly, we conclude that inasmuch as General was exercising direct supervision and control over Walker at a height above twelve feet, the "right to control" requirement is satisfied.

## SCOPE OF EMPLOYMENT

Walker also contends that whether his injury arose out of or in the course of his employment is a factual issue that cannot be properly determined in a summary judgment. However, this court has previously held that when the underlying facts are not in dispute, the determination of whether an injury occurred within the course of employment is a conclusion of law. *Goodyear Tire & Rubber Co. v. Industrial Comm'n,* 100 Utah 8, 9, 110 P.2d 334, 334 (1941).

The requirement that the accident arise in the course of employment is satisfied if it occurs while the employee is rendering service to his employer, which he was hired

to do, at the time when and in the place where his employer directed him to render such service. *M & K Corp. v. Industrial Comm'n,* 112 Utah 488, 493, 189 P.2d 132, 134 (1948). It is undisputed that Walker was injured while he was rendering service to General at the time and in the place requested. General requested that an employee come to its job site and assist a carpenter; Walker arrived at the site and was told to climb the scaffolding and help the carpenter. Walker followed General's explicit instructions. He climbed the scaffolding and was handing lumber to the carpenter when the accident occurred. Nothing in the record suggests that Walker was doing anything other than performing General's work pursuant to its instructions. Therefore, when Walker was injured, he was clearly working within the course of his employment.

### SPECIAL EMPLOYER STATUS

■ In addition, Walker asserts that General did not become his special employer. He contends that if General did not intend to abide by the height restriction imposed by SOS, General "committed fraud at the inception and failed to have the requisite intent to form a contract with SOS or an employment contract with Walker." Inasmuch as Walker has failed to properly brief this argument, we decline to address its merits. Rule 24(a)(9) of the Utah Rules of Appellate Procedure requires that a party's argument section of his or her brief "contain the contentions of the appellant ... with citations to the authorities, statutes, and parts of the record relied on." *See State v. Wareham,* 772 P.2d 960, 966 (Utah 1989); *State v. Amicone,* 689 P.2d 1341, 1344 (Utah 1984). "A brief must contain some support for each contention." *Wareham,* 772 P.2d at 966. Walker's briefs wholly fail to cite to the record or a single case in support of this contention. We therefore do not address it.

### PUBLIC POLICY

■ Finally, Walker contends that General should be held liable because it violated the contractual height limitation SOS placed upon it. According to Walker, "[t]o do less is to give these special employers carte blanche

to do with employees as they wish with no economic consequences." We disagree.

A major flaw in Walker's argument is that it would award temporary employees greater benefits than regular employees. If Walker had been hired directly by General and was covered by workers' compensation, his exclusive remedy would have been provided for by the Act, even though General had placed him in a hazardous environment. *See* Utah Code Ann. § 35–1–12 (providing for fifteen percent compensation enhancement where injury is caused by willful failure of employer to provide safe work place). Indeed, in *Bingham v. Lagoon Corp.,* 707 P.2d 678 (Utah 1985), a minor was illegally placed in hazardous employment in violation of a statute prohibiting such employment. *See* Utah Code Ann. § 34–23–201 (formally § 34–23–2). She sustained serious injury and brought a tort action against her employer. We held that she could not void her employment contract and sue her employer in torts but that she was limited to the workers' compensation benefits that specifically provide for those circumstances. *Bingham,* 707 P.2d at 679; *see* Utah Code Ann. § 35–1–43(1)(b).

Here, Walker received workers' compensation but is also attempting to recover tort damages, something clearly unavailable to regular employees. We cannot find any basis in the Act for such disparate treatment. It may be that SOS has a cause of action against General for breach of their agreement that employees furnished by SOS not be required to work at heights in excess of twelve feet if SOS has sustained damages in the form of increased workers' compensation premiums. But that question is not before us, and we express no opinion on it.

Judgment affirmed.

ZIMMERMAN, C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.

STEWART, Assoc. C.J., concurs in the. result.