2007-NMCA-078

162 P.3d 909

**Carl HAMBERG, Plaintiff–Appellant,**

v.

**SANDIA CORPORATION, d/b/a Sandia National Laboratories, Defendant–Appellee.**

**No. 26,559.**

Court of Appeals of New Mexico.

April 18, 2007.

Certiorari Granted, No. 30,391, June 25, 2007.

Duane Lind Albuquerque, NM, William H. Lazar Tesuque, NM, for Appellant.

Kennedy, Moulton & Wells, P.C., Deborah D. Wells, Rodey, Dickason, Sloan, Akin & Robb, P.A. Edward Ricco, Jocelyn Drennan, Sandia Corporation, Charles Pechewlys, Albuquerque, NM for Appellee.

## OPINION

PICKARD, Judge.

{1} Plaintiff appeals from the district court's award of summary judgment in favor of Defendant, Sandia Corporation, doing business as Sandia National Laboratories. On appeal, Plaintiff argues that the district court erred as a matter of law in determining that Defendant was Plaintiff's special employer and therefore immune from tort liability under the exclusivity provisions of the Workers' Compensation Act (WCA), NMSA 1978, §§ 52–1–6(D), (E), –8, –9 (1937, as amended through 1990). We affirm.

## BACKGROUND

{2} Plaintiff was an employee of Orion International Technologies, Inc. (Orion). Orion is a government services contractor that provides "contract employees" to governmental agencies. Defendant contracted with Orion in 1996 for "staff augmentation personnel" to be provided by Orion as needed by Defendant. Under the contract, when Defendant identifies a need for personnel, it submits a job description and requirements for the position to Orion. Orion then provides Defendant with a list of qualified candidates and Defendant selects which candidate it wants.

{3} Pursuant to Defendant's contract with Orion, Defendant provides day-to-day technical direction to the contract employees. This includes assigning work, monitoring technical performance and compliance with safety standards, authorizing travel and training, assigning overtime, approving time records, and inspecting work in progress or completed by the contract employee. Defendant may also direct Orion to remove any contract employee from the contract with Defendant. Orion, on the other hand, is responsible for all decisions relating to hiring, firing, promotions, demotions, compensation, employee benefits, employment duration, career development, and position reclassifications and reassignments. For the purposes of the contract, all contract employees are considered employees of Orion and are not considered Defendant's employees.

{4} Plaintiff was hired by Orion in 2001. He was assigned to work as a graphics technologist for Defendant pursuant to the staff augmentation contract between Orion and Defendant. Plaintiff's employment agreement with Orion stated that Orion, and not Defendant, was Plaintiff's employer. Orion paid Plaintiff an hourly wage, offered him employment benefits, and provided him with vacation and sick leave. Plaintiff's job description as a contract employee for Defendant was to provide graphic design services in support of Defendant's marketing efforts.

{5} Plaintiff was injured in 2002 after a supervisor employed by Defendant allegedly ordered Plaintiff to disassemble and move a large metal storage unit. Plaintiff received workers' compensation benefits paid by Orion and then sued Defendant for personal injuries resulting from Defendant's alleged negligence. Defendant moved for summary judgment, arguing that Plaintiff's suit was barred by the exclusivity provisions of the WCA. The district court granted Defendant's motion for summary judgment. This appeal follows.

## STANDARD OF REVIEW

{6} We review the district court's grant of summary judgment in favor of Defendant de novo. *Self v. United Parcel Serv., Inc.,* 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Summary judgment is appropriate "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.; see also* Rule 1–056(C) NMRA. On review, we will "view the facts in the light most favorable to the party opposing summary judgment, drawing all inferences in favor of that party." *Stieber v. Journal Publ'g Co.,* 120 N.M. 270, 271–72, 901 P.2d 201, 202–03 (Ct.App.1995).

## DISCUSSION

{7} In general, employers who comply with the requirements of the WCA enjoy immunity from tort actions brought by an injured employee. *See* §§ 52–1–6(D), (E), –8, –9; *Vigil v. Digital Equip. Corp.,* 1996–NMCA–100, ¶ 7, 122 N.M. 417, 925 P.2d 883; *Rivera v. Sagebrush Sales, Inc.,* 118 N.M. 676, 677–78, 884 P.2d 832, 833–34 (Ct. App.1994). *But see Delgado v. Phelps Dodge Chino, Inc.,* 2001–NMSC–034, ¶ 1, 131 N.M. 272, 34 P.3d 1148 (holding "that when an employer willfully or intentionally injures a worker, that employer, like a worker who commits the same misconduct, loses the rights afforded by the Act"). "This statutory scheme ensures that injured workers are adequately compensated and that employers may avoid excessive tort liability." *Vigil,* 1996–NMCA–100, ¶ 7, 122 N.M. 417, 925 P.2d 883. Before an employer may seek the protection of the WCA's exclusivity provisions, however, there must exist "some form of an employer-employee relationship, either statu-

tory or actual." *Quintana v. Univ. of Cal.,* 111 N.M. 679, 681, 808 P.2d 964, 966 (Ct.App. 1991), *overruled on other grounds by Harger v. Structural Servs., Inc.,* 1996–NMSC–018, 121 N.M. 657, 666 n. 3, 916 P.2d 1324, 1333 n. 3. The employer must also comply with the WCA's insurance provisions. *See Harger,* 121 N.M. at 666, 916 P.2d at 1333.

{8} At issue in the present case is whether an employer-employee relationship exists between Plaintiff and Defendant such that Plaintiff's negligence claim against Defendant is barred by the exclusivity provisions of the WCA. Below, the district court concluded that Defendant was Plaintiff's special employer and therefore entitled to seek refuge under the exclusivity provisions of the WCA. On appeal, Plaintiff argues that the district court erred in determining that Defendant was a special employer entitled to immunity under the WCA. Plaintiff asserts that the special employer test, as described in *Rivera,* 118 N.M. at 678–79, 884 P.2d at 834–35, is not applicable to the facts of this case and that the district court should have applied the statutory employer test described in *Harger,* 121 N.M. at 664–66, 916 P.2d at 1331–33. Plaintiff contends that under that test, Defendant would not be protected by the exclusivity provisions of the WCA, and Plaintiff's suit would therefore not be barred.

{9} We take the opportunity to once again attempt to describe the differences between statutory employers and special employers. *See Rivera,* 118 N.M. at 678, 884 P.2d at 834 (observing that the difference between the two tests "is a matter of some confusion within the practicing bar, with some people taking the position that there is no distinction and that borrowed employees are just one sort of statutory employee"). As part of that discussion, we examine Plaintiff's contention that the totality of the circumstances test described in *Harger,* 121 N.M. at 664, 916 P.2d at 1331, should be applied to the facts of this case. Finally, after determining that the special employer test is the correct test under the facts of this case, we will then decide whether summary judgment was properly granted in favor of Defendant.

## A. Special Employer & Statutory Employer Tests

■■■ {10} The special employer test is a "creature of the common law." *Bendure v. Great Lakes Pipe Line Co.*, 199 Kan. 696, 433 P.2d 558, 563 (1967). The test arises out of the borrowed or lent employee doctrine and applies to situations "where an employee of one employer, the general employer, works temporarily for another employer, the special employer." *Rodriguez v. Martin Landscape*, 882 S.W.2d 602, 604 (Tex.Ct.App.1994); *see Rivera*, 118 N.M. at 678–79, 884 P.2d at 834–35. The typical factual scenario in which this test arises is in cases where a labor contractor or a labor service provides temporary workers to other employers. *See Vigil*, 1996–NMCA–100, ¶¶ 16–18, 122 N.M. 417, 925 P.2d 883; *Rivera*, 118 N.M. at 681, 884 P.2d at 837; *Word v. Motorola, Inc.*, 135 Ariz. 517, 662 P.2d 1024, 1027 n. 5 (1983) (en banc); *Ghersi v. Salazar*, 883 P.2d 1352, 1356–57 (Utah 1994). "Once the relationship of lent employee or special employee and employer is established, the special employee becomes the servant of the special employer and assumes the position under the Workmen's Compensation Act as a regular employee...." *Bendure*, 433 P.2d at 564; *see also Ghersi*, 883 P.2d at 1356 ("Almost without exception, courts have relied on the loaned employee doctrine to hold that the special employer of a temporary employee is an employer for workers' compensation purposes."). Special employers who comply with the WCA's insurance provisions are entitled to immunity from tort suits. *See Rivera*, 118 N.M. at 677–78, 884 P.2d at 833–34.

{11} Although the statutory employer test serves a similar purpose to that served by the special employer test, it is applied under different factual circumstances. *Id.* at 680, 884 P.2d at 836; *see also Lindsey v. Bucyrus–Erie*, 161 Ariz. 457, 778 P.2d 1353, 1355 (Ct.App.1989) ("The statutorily created employer-employee relationship is a legislative scheme by which conceded non-employees are deliberately brought within coverage of the Workers' Compensation Act and is inapplicable to the classic lent employee relationship involved here."); *Bendure*, 433 P.2d at 563 ("Where the appropriate facts are present the employment may bring the employee under the Workmen's Compensation Act as a statutory employee or the facts may eliminate the relationship of statutory employer and employee and bring the workman under the [A]ct as a special employee."); *McGinnis v. Waste Mgmt. of La., L.L.C.*, 914 So.2d 612, 616 (La.Ct.App.2005) ("Special employer status is distinguished from that of a statutory employer."); *Ghersi*, 883 P.2d at 1356 ("The relationships between a labor service, a 'loaned' or temporary employee, and a temporary employer are different from statutory employer-employee relationships and different legal principles govern that relationship."). The statutory employer test arose out of statutes enacted in response to the common law rule that "an employee of a contractor or subcontractor was not considered an employee of the principal and such an employee ... was not entitled to compensation from the principal or employer of the contractor or subcontractor under the original Workmen's Compensation Act." *Bendure*, 433 P.2d at 563; *cf.* 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 73.03[2], at 73–8 (2006) ("[O]ne purpose of the statutory-employer statute is to prevent evasion of the act by parceling out the employer's own work in the form of subcontracts.").

{12} In New Mexico, the statute giving rise to the statutory employer test is NMSA 1978, § 52–1–22 (1989), which provides that:

> where any employer procures any work to be done wholly or in part for him by a contractor other than an independent contractor and the work so procured to be done is a part or process in the trade or business or undertaking of such employer, then such employer shall be liable to pay all compensation under the Workers' Compensation Act to the same extent as if the work were done without the intervention of such contractor.

Under this statutory provision, a employer is considered a statutory employer when two conditions are met: "(1) the employer must procure work to be done by a contractor other than an independent contractor and (2) the work must be a part of the trade or business of the employer." *Rivera*, 118 N.M.

at 680, 884 P.2d at 836; *see also Chavez v. Sundt Corp.*, 1996–NMSC–046, ¶ 8, 122 N.M. 78, 920 P.2d 1032; *Harger*, 121 N.M. at 662, 916 P.2d at 1329; *Quintana*, 111 N.M. at 681, 808 P.2d at 966. Unlike the special employer test that addresses situations dealing with lent or borrowed employees, the statutory employer test typically "address[es] the prime contractor-subcontractor situation." *Rivera*, 118 N.M. at 680, 884 P.2d at 836; *see also Bendure*, 433 P.2d at 563 ("Different facts are necessary to create the two different relationships.").

{13} Before addressing which test is appropriate in the present case, we initially observe that Plaintiff misstates the statutory employer test. Plaintiff claims that *Harger* established a "totality of [the] circumstances" test for whether an employer can be considered a statutory employer. *See Harger*, 121 N.M. at 664, 916 P.2d at 1331. Plaintiff appears to assert that the adoption of a totality of the circumstances approach in the statutory employer context suggests that we should apply the test described in *Harger* to the facts of this case, even if it is deemed a special employer case. We believe that Plaintiff misconstrues *Harger*.

{14} The test that Plaintiff urges this Court to apply to the facts of this case is not the test for determining whether an employer can be considered a statutory employer, but rather is the test to be used in determining whether a contractor is an independent contractor, which is expressly exempted from Section 52–1–22. *See Celaya v. Hall*, 2004–NMSC–005, ¶ 11, 135 N.M. 115, 85 P.3d 239 (stating that in *Harger*, the Court "adopted the Restatement (Second) of Agency § 220 (1958) to identify an independent contractor for purposes of workers' compensation"); *Chavez*, 1996–NMSC–046, ¶¶ 8–12, 122 N.M. 78, 920 P.2d 1032 (applying the totality of the circumstances test described in *Harger* to determine whether a subcontractor was an independent contractor under Section 52–1–22); *Benavidez v. Sierra Blanca Motors*, 1998–NMCA–070, ¶ 8, 125 N.M. 235, 959 P.2d 569 (recognizing that the Supreme Court's opinion in *Harger* focused on the meaning of the term "independent contractor" as used in Section 52–1–22). Contrary to Plaintiff's assertions, the Court in *Harger* did not reject any previously used special or statutory employer tests, but instead rejected our Court's formulation of a test to determine whether a party is an independent contractor. *Harger*, 121 N.M. at 664, 916 P.2d at 1331 (rejecting this Court's definition of "independent contractor" and adopting the definition found in the Restatement (Second) of Agency § 220). Indeed, the Court in *Harger* observed that the same two-part test described above was the proper test for determining whether an employer can be considered a statutory employer under Section 52–1–22. *Harger*, 121 N.M. at 662, 916 P.2d at 1329 (stating that an employer is a statutory employer and therefore immune under the WCA when: "(1) . . . the work is done by 'a contractor other than an independent contractor,' and (2) . . . the work is 'a part or process in the trade or business or undertaking' of the employer of the contractor" (citation omitted)).

{15} Moreover, there was no question in *Harger* that the statutory employer test was the correct test under the facts of the two consolidated cases on appeal. In one case, a general contractor renovating the City of Albuquerque's wastewater treatment plant hired a subcontractor to sandblast and apply protective coatings to clarifier units at the plant. *Romero v. Shumate Constructors, Inc.*, 119 N.M. 58, 62, 888 P.2d 940, 944 (Ct.App.1994), *rev'd in part on other grounds by Harger*, 121 N.M. at 661, 670, 916 P.2d at 1328, 1337. The injured worker was an employee of the subcontractor. *Romero*, 119 N.M. at 62, 888 P.2d at 944. In the second consolidated case, a general contractor was hired to construct a school in Zuni, New Mexico, and contracted with a subcontractor to do mechanical work on the project. *Id.* As in the first case, the injured employee was an employee of the subcontractor. *Id.*

{16} Applying the two-part statutory employer test to the consolidated cases, this Court determined that both general contractors were statutory employers under Section 52–1–22. *Romero*, 119 N.M. at 63–70, 888 P.2d at 945–52. The Supreme Court reversed, holding that the subcontractors were in fact independent contractors and therefore the two-part statutory employer test was not met. *Harger*, 121 N.M. at 669–70, 916 P.2d

at 1336–37. In so holding, *Harger* did not reject the two-part statutory employer test in favor of a totality of the circumstances approach, nor did it otherwise suggest that the special employer test should be rejected. *See Vigil,* 1996–NMCA–100, ¶ 24, 122 N.M. 417, 925 P.2d 883 ("*Harger,* however, did not question this Court's decision or analysis in *Rivera,* in which we clearly separated the concepts of special or borrowed employers from the concept of statutory employees."). We therefore conclude that Plaintiff's reliance on *Harger* is misplaced.

{17} Additionally, we conclude that Plaintiff's claim that he is an independent contractor and therefore the statutory employer test is not met is incorrect as a matter of law. We note that it is not clear from Plaintiff's brief whether Plaintiff believes that he is an independent contractor or whether his employer Orion is. However, to the extent that Plaintiff argues that Defendant cannot be a statutory employer because Plaintiff is an independent contractor, we believe that Plaintiff confuses the issue:

> Both parties discuss at great length the various tests that we have used in the past to determine whether a person was an employee for workers' compensation purposes. Those tests, however, were designed to differentiate employees from independent contractors, and have not proved useful here, where the question is whose employee [Plaintiff] was, rather than whether or not he was an employee at all.

*Ruble v. Arctic Gen., Inc.,* 598 P.2d 95, 96–97 (Alaska 1979) (footnote omitted). Moreover, if Plaintiff was truly an independent contractor, he would not have been entitled to the nearly $200,000 in workers' compensation benefits that he has already received from Orion. *See Headley v. Morgan Mgmt. Corp.,* 2005–NMCA–045, ¶ 13, 137 N.M. 339, 110 P.3d 1076.

{18} Additionally, to the extent that Plaintiff appears to argue that Orion is an independent contractor (and thus the statutory employer test is not met), we observe that a conclusion that the statutory employer test is not met does not foreclose this Court from considering whether the special employer test is applicable. *See Rivera,* 118 N.M. at 680, 884 P.2d at 836. Where, as here, the facts suggest that the employer-employee relationship is more like that of a borrowed or lent employee as opposed to a contractor-subcontractor situation, the fact that the statutory employer test may or may not be met is simply immaterial to our analysis.

{19} As a general matter, "the statutory-employer doctrine governs only situations in which an employer procures work to be done for him by a contractor." *Id.* at 681, 884 P.2d at 837. In this case, Defendant did not procure work to be done by Orion, but instead sought temporary employees to augment its own departments and staff. Plaintiff's assertion that Defendant procured work to be done by one of Orion's employees, as opposed to Orion itself, supports our conclusion that the facts of this case more appropriately present a lent or borrowed employee situation rather than a prime contractor-subcontractor situation. *See id.* ("Sagebrush undertook to do its own work through its own employees and temporary workers supplied by Madden. It did not contract with Madden to run the lumberyard, but simply to supply it with temporary laborers whom Sagebrush would direct in performing the work of the lumberyard."); *Word,* 662 P.2d at 1026 ("Here, Motorola did not procure work to be done by Paramount. It undertook to perform the work itself, through its employees, and procured plaintiff and additional temporary employees from Paramount and other labor contractors.").

{20} A comparison of two of our cases lends particular support to our conclusion. In *Rivera,* a lumberyard contracted with a temporary employment agency for workers to work at the lumberyard on an as-needed basis. 118 N.M. at 677, 884 P.2d at 833. One of the temporary workers was subsequently injured while working at the lumberyard. *Id.* In concluding that both parties' reliance on cases involving statutory employers was misplaced, this Court observed that the lumberyard contracted with the temporary employment agency for workers to perform the lumberyard's work—it did not contract with the agency for the agency to run the lumberyard. *Id.* at 681, 884 P.2d at 837.

As such, the statutory employment test was not applicable to the facts of the case, as the facts did not present a contractor-subcontractor situation. *See, e.g., Ghersi,* 883 P.2d at 1356 ("A temporary labor service is not like a subcontractor. Such a service does not perform any work for customers; it merely supplies or 'loans' workers who are under contract to the service to work as an employee for a client." (citations omitted)).

{21} Conversely, the facts in *Quintana* do present such a situation. In *Quintana,* a national laboratory contracted with a company to provide support functions to the laboratory. 111 N.M. at 680, 808 P.2d at 965. Unlike the temporary employment agency in *Rivera,* the company in *Quintana* was not simply providing temporary workers to assist the national laboratory in its operations, but instead was itself actually performing work for the laboratory by providing essential services. *See id.* Thus, the statutory employer test was the appropriate test given the facts of the case. *Compare Vigil,* 1996–NMCA–100, ¶¶ 16–22, 122 N.M. 417, 925 P.2d 883 (applying the special employer test where worker was employed by a personnel agency and assigned to work at another company), *with Romero,* 119 N.M. at 63–64, 888 P.2d at 945–46 (engaging in a statutory employer analysis where workers were employed by subcontractors who had contracted with general contractors to perform work).

{22} In the present case, Plaintiff has not presented any evidence to suggest that Orion was itself providing graphic design services for Defendant. Such a scenario would present a contractor-subcontractor situation where the statutory employer test would have relevance. Rather, the undisputed facts indicate that Orion provided Defendant with contract employees intended to augment Defendant's already existing operations. This situation is much more akin to that of a borrowed or loaned employee.

{23} Despite these facts, Plaintiff asserts he cannot be considered a borrowed employee because (1) he is a skilled artisan who worked without Defendant's supervision; (2) his employment contract stated that he was Orion's employee; (3) he was referred to as a "contractor" or a "consultant" at work; and (4) his employment was not short term, but was expected to last more than three years. According to Plaintiff, these facts indicate that he was a procured contractor and not a borrowed employee, and therefore the special employment test is not applicable.

{24} Plaintiff cites no authority in support of these propositions. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't,* 1998–NMCA–078, ¶ 10, 125 N.M. 244, 959 P.2d 969 ("ITT cites no authority for this proposition and therefore it will not be considered in this appeal."). Further, to the extent that Plaintiff attempts to use these facts in support of his claim that he is an independent contractor, we find such assertions without merit as Plaintiff cannot be considered an independent contractor under the facts of this case. As previously discussed, the issue is not whether Plaintiff is an employee or an independent contractor, but whether Plaintiff, as an employee of Orion, may also be considered an employee of Defendant for workers' compensation purposes. *See Ruble,* 598 P.2d at 96–97.

{25} Because the facts of this case indicate that Orion lent or supplied Plaintiff to Defendant as a contract employee, we conclude that the district court correctly determined that the special employee test was applicable to the case at bar. We now turn to the question of whether the district court correctly found that the elements of the special employer test were met.

**B. Application of the Special Employer Test to the Facts of this Case**

{26} In the present case, there is no question that Plaintiff was directly employed by Orion. However, under the special employer doctrine, Defendant may be considered Plaintiff's special employer if the following factors are met:

(1) the employee has made a contract of hire, express or implied, with the special employer;

(2) the work being done is essentially that of the special employer; and

(3) the special employer has the right to control the details of the work.

*Rivera,* 118 N.M. at 678–79, 884 P.2d at 834–35 (quoting 1B Arthur Larson, *The Law of Workmen's Compensation* § 48.00, at 8–434 (1993)); *see also Johnson v. Aztec Well Servicing Co.,* 117 N.M. 697, 699, 875 P.2d 1128, 1130 (Ct.App.1994). If the above test is met, Defendant is a special employer and is entitled to immunity from tort liability under the Act, providing that Defendant complied with the Act's insurance provisions. *See Rivera,* 118 N.M. at 679–80, 884 P.2d at 835–36. On appeal, Plaintiff concedes that the first factor is met, but argues that genuine issues of material fact exist as to the remaining factors. We disagree.

{27} As to the second factor, Plaintiff argues that Defendant's primary work is "focused on scientific endeavors directed at national security." Plaintiff contends, therefore, that his work as a graphic designer in support of Defendant's marketing efforts was purely incidental to Defendant's mission and cannot be considered the work of the Defendant. However, as recognized by Defendant, Plaintiff's distinction between primary and incidental work has been previously rejected by this Court in *Vigil,* 1996–NMCA–100, ¶ 20, 122 N.M. 417, 925 P.2d 883.

{28} In *Vigil,* a personnel agency assigned the plaintiff to work as a contract employee for Digital Equipment Corporation (Digital). *Id.* ¶ 4. The plaintiff was assigned to dismantle conveyor belts and was subsequently injured on the job. *Id.* ¶¶ 3–4. The plaintiff later argued that because Digital was not in the business of dismantling conveyor belts, he was not doing the work of Digital. *Id.* ¶ 20. This Court rejected this argument, noting that Digital required conveyor belts for its business operations. *Id.* Additionally, this Court observed that the plaintiff's work could not be that of the personnel agency, as it was "in the business of recruiting and managing temporary workers." *Id.* This Court further noted that the plaintiff was on Digital's premises when he was injured and that he was being supervised by employees of Digital. *Id.* Thus, this Court concluded that the plaintiff was doing the work of Digital when he was injured. *Id.*

{29} Similarly, although Defendant is not in the business of marketing, its marketing efforts are part of its overall business operations. Orion, on the other hand, is in the business of providing staff augmentation services to governmental entities. *See Rivera,* 118 N.M. at 679, 884 P.2d at 835 ("The work that Rivera was doing, tagging lumber, was clearly the work of Sagebrush, which was in the lumberyard business, as opposed to the work of Madden, which was in the business of recruiting and supplying temporary laborers."). Plaintiff performed his work at Defendant's facilities and in support of Defendant's marketing efforts. Additionally, Plaintiff was injured on Defendant's premises while allegedly following the orders of one of Defendant's employees. We therefore reject Plaintiff's argument that he was not doing the work of Defendant.

{30} Plaintiff next argues that the third factor is not met because there is no indication that Defendant had the right to control the details of Plaintiff's work. In support of his assertion, Plaintiff points to contract provisions between Orion and Defendant stating that Orion was responsible for all decisions relating to hiring, firing, promotions, demotions, compensation, employee benefits, employment duration, career development, and position reclassifications and reassignments. Additionally, Plaintiff asserts that he worked independently from Defendant without supervision. Lastly, Plaintiff claims that Defendant's insistence that no employer-employee relationship existed between Orion's employees and Defendant further demonstrates that Defendant had no control over Plaintiff. We are not persuaded that this evidence creates an issue of material fact as to the third factor.

{31} The third factor of the special employer test contemplates "that both the general employer and the special employer may have concurrent rights to control the employee of both employers." *Rhodes v. Ala. Power Co.,* 599 So.2d 27, 29 (Ala.1992). The dispositive issue under this factor is whether "'the *special employer* has the right to control the details of the work' of the employee, not which of the employers has such a right." *Id.* (quoting *Terry v. Read Steel Prods.,* 430

So.2d 862, 865 (Ala.1983)); *see also Teska v. Potlatch Corp.*, 184 F.Supp.2d 913, 928 (D.Minn.2002) ("The lending, or general employer, does not have to completely surrender all control over the employee, and the borrowing, or special employer, does not have to exercise complete control over the employee, such as the ability to discipline or to fire."). Significantly, the focus of our analysis is not on whether Defendant actually controlled Plaintiff's work, but instead on whether Defendant merely had the right to control the work. *See Benavidez*, 1998-NMCA-070, ¶ 12, 125 N.M. 235, 959 P.2d 569; 99 C.J.S. *Workers' Compensation* § 123, at 189-90 (2000) ("[T]he actual exercise of control over the worker is not determinative. Instead, it is only the right of control that is relevant." (footnotes omitted)).

{32} The fact that Orion may have exercised control over a number of aspects of Plaintiff's employment does not mean that Defendant did not have the right to control the details of Plaintiff's work. As previously observed, Defendant selects which Orion employees will work at its facilities. Moreover, the contract between Orion and Defendant states that Defendant will provide day-to-day technical direction to the employees supplied by Orion. Such technical direction includes assigning work, monitoring technical performance and compliance with safety standards, authorizing travel and training, assigning overtime, approving time records, and inspecting work in progress or completed by the contract employee. Additionally, Defendant is also contractually permitted to request that Orion remove a contract employee from his or her assignment with Defendant. Such evidence is sufficient to establish that Defendant had the right to control the details of Plaintiff's work. *Cf. Danek v. Meldrum Mfg. & Eng'g Co.*, 312 Minn. 404, 252 N.W.2d 255, 258 (1977) ("The fact that Labor Pool hired and had the right to fire plaintiff, compensated her directly, and paid the expenses of her social security taxes and workers' compensation insurance did not give Labor Pool the right to control the details of the performance of her work.").

{33} Plaintiff does not meaningfully dispute these contractual provisions, but instead argues that because he worked independently, Defendant did not exercise control over his employment. We note, however, that this Court has rejected the argument that lack of constant supervision or direction somehow indicates a lack of control by a purported special employer. *See Vigil*, 1996-NMCA-100, ¶ 21, 122 N.M. 417, 925 P.2d 883; *Rivera*, 118 N.M. at 679-80, 884 P.2d at 835-36. Moreover, such a rule would mean that the special employer test is inapplicable to situations in which the lent employee is skilled or otherwise requires little supervision due to the nature of the work. As recognized by Larson,

> the "control" which the special employer must assume need not extend to directing the technical details of a skilled employee's activity. This would mean that skilled employees would hardly ever be employees under the act. What is essential ... is the right to control the time and place of the services, the person for whom rendered, and the degree and amount of services.

3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 67.06, at 67-17 (2006) (footnotes omitted); *see also Ghersi*, 883 P.2d at 1357 (concluding that an employer had the right to control the details of a contract employee's work where the employer exercised control over "[w]hen, where, and how" the contract employee was to work); 99 C.J.S. *Workers' Compensation* § 123, at 190 ("[T]he mere fact that the employee is skilled does not, in and of itself, establish that the original employer, or the lending or general employer, has retained the right to control the manner of performance of the work assigned, for purposes of liability for workers' compensation and exclusive remedy protection."). We therefore do not consider the fact that Plaintiff required little supervision to raise a question of fact on the question of whether Defendant exercised control over Plaintiff.

 {34} Lastly, Plaintiff argues that provisions in the contract between Defendant and Orion in which Defendant maintains that it is not to be considered the employer of contract employees supplied by Orion establishes that Defendant did not exercise control over Plaintiff. Once again, we disagree.

"While employers certainly may contract as between themselves to define their business relationships and accomplish their business objectives, an agreement between the employers may not be determinative of the issue of special employment." *Thompson v. Grumman Aerospace Corp.*, 78 N.Y.2d 553, 578 N.Y.S.2d 106, 585 N.E.2d 355, 358 (1991). Further, as we previously observed, Defendant and Orion did include provisions within their contract that did permit Defendant to exercise day-to-day technical direction over the work of employees supplied by Orion. As such, we conclude that Defendant had the right to control the details of Plaintiff's work. *Cf. Rivera*, 118 N.M. at 679, 884 P.2d at 835 ("The fact that Rivera's affidavit asserted that he had no employment contract with Sagebrush and that he had not been told he would be considered Sagebrush's employee for purposes of the Act does not change this result.").

{35} Defendant, as Plaintiff's special employer, is thus immune under the exclusivity provisions of the WCA, providing that Defendant complied with the insurance provisions of the WCA. *See Rivera*, 118 N.M. at 678–80, 884 P.2d at 834–36. We observe that Plaintiff does not argue that Defendant has failed to comply with the WCA's insurance provisions, instead arguing that this Court need not reach that question since Defendant is neither a statutory nor a special employer. The undisputed material facts establish that Defendant indirectly paid for workers' compensation insurance through payments made to Orion under the staff augmentation contract. We therefore conclude that Defendant has complied with the insurance requirements under the WCA such that Plaintiff is barred from suing Defendant for negligence. *See Harger*, 121 N.M. at 666, 916 P.2d at 1333; *Vigil*, 1996–NMCA–100, ¶ 15, 122 N.M. 417, 925 P.2d 883; *Rivera*, 118 N.M. at 678–80, 884 P.2d at 834–36; *Garcia v. Smith Pipe & Steel Co.*, 107 N.M. 808, 809–10, 765 P.2d 1176, 1177–78 (Ct.App.1988).

**CONCLUSION**

{36} The district court's grant of summary judgment in favor of Defendant and dismissal of Plaintiff's claim is affirmed.

{37} IT IS SO ORDERED.

WE CONCUR: JAMES J. WECHSLER, and CELIA FOY CASTILLO, Judges.