Certiorari Denied, No. 31,884, September 10, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-117**

**Filing Date:   July 23, 2009**

**Docket No. 26,386**

**MOONGATE WATER COMPANY INC.,**
**a New Mexico public utility,**

> **Plaintiff-Appellee,**

**v.**

**CITY OF LAS CRUCES,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Robert E. Robles, District Judge**

William H. Lazar
Tesuque, NM

Kyle W. Gesswein
Las Cruces, NM

for Appellee

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward Ricco
Albuquerque, NM

Office of the City Attorney
Harry S. "Pete" Connelly
Marcia B. Driggers
Las Cruces, NM

Martin, Lutz, Roggow, Hosford & Eubanks, P.C.
William L. Lutz
Las Cruces, NM

1

for Appellant

**OPINION**

**FRY, Chief Judge.**

**{1}**    The opinion filed in this case on June 19, 2009, is hereby withdrawn, and the following opinion is filed in its place.  The motion for rehearing is denied.

**{2}**    This case arises from a dispute between the City of Las Cruces and Moongate Water Company over the right to supply water in a disputed area within the City's territorial limits. The district court granted summary judgment in favor of Moongate on Moongate's theory that it is a third-party beneficiary of a settlement agreement entered into by the City and Doña Ana Mutual Domestic Water Consumers Association (Doña Ana) to resolve an earlier lawsuit between those parties and that the settlement agreement constitutes an enforceable promise by the City to refrain from serving the area in dispute in this case.  Consequently, the district court declared that the City is contractually prohibited from providing water service in the disputed area.  The district court also declared that Moongate's utility franchise with the City expired and is of no effect and that Moongate is not required to have a franchise from the City in order to continue serving its customers within the City. Moongate had sought this declaration in order to continue to provide water service to its customers without the burden of the terms and conditions of the franchise agreement.  The City appealed, arguing that the franchise should continue as an implied contract as long as the parties continue to operate as they did when the franchise was in effect.  We agree, and for the following reasons we hold that the franchise between Moongate and the City remained in effect beyond its expiration as an implied contract.

**BACKGROUND**

**{3}**    In 1988, the City granted a franchise to Moongate allowing Moongate to operate a water distribution system.  The franchise gave Moongate the right to lay its pipes and other distribution equipment on public land and delineated Moongate's obligations to avoid interfering with public ways when placing its equipment.  The franchise gave detailed instructions regarding Moongate's obligations to obtain permits, consult with the City's utility director, repair any damage to municipal property caused by its excavations, and restore public ways to their original condition.  In addition, the franchise authorized the City to require Moongate to move its equipment under certain circumstances and required Moongate to pay a yearly franchise fee based on the number of customers it served.  The franchise expired on December 31, 2002.

**{4}**    Prior to the franchise's expiration, the City notified Moongate that due to the uncertainty over Moongate's service area caused by litigation between the City and Doña Ana, and due to uncertainty regarding changes that the Legislature intended to make to the

2

Public Utility Act (PUA), NMSA 1978, §§ 62-3-1 to -5 (1967, as amended through 2008), in 2003, it would delay negotiating a new franchise until the litigation had been resolved and the PUA had been amended. The City noted that the expired franchise would continue on a month-to-month basis until a new franchise could be drafted.

{5}     During the litigation over the third-party beneficiary issue, Moongate contended that the franchise had terminated in 2002 and that there was no longer a franchise agreement governing its relationship with the City. In response to this assertion, the City argued that if Moongate did not have a franchise, Moongate could not continue using the City's property to operate its water distribution system. Moongate then filed a motion for a declaratory judgment that the franchise had expired and that it had a right to provide water using City property without a franchise. The district court agreed with Moongate and granted partial summary judgment in favor of Moongate, ruling that Moongate's "franchise has expired and is of no force and effect" and that Moongate "is not required to have a franchise from the City . . . to serve water customers within the City."

## DISCUSSION

### Standard of Review

{6}     On appeal from summary judgment, we review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute. *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 15, 123 N.M. 752, 945 P.2d 970; *Hamburg v. Sandia Corp.*, 2007-NMCA-078, ¶ 6, 142 N.M. 72, 162 P.3d 909. If no material issues of fact are in dispute and an appeal presents only a question of law, we do not review in the light most favorable to the party opposing the motion, and we apply de novo review. *Rutherford v. Chaves County*, 2003-NMSC-010, ¶ 8, 133 N.M. 756, 69 P.3d 1199. Here, neither party argues that any material issues of fact are in dispute, and resolution of this appeal depends solely on whether an expired franchise continues by operation of law under implied terms after its expiration. Thus, this appeal presents a question of law that we review de novo.

### Moongate's Franchise Claim Is Justiciable

{7}     The City first argues that the question of whether the franchise continued after its expiration is not justiciable because there is not a "concrete controversy between the parties" and that Moongate's motion for partial summary judgment on the franchise issue therefore "amounted to [nothing] more than a request for an advisory opinion."

{8}     The district court's jurisdiction in a declaratory action is limited to cases of actual controversy. *State ex rel. Stratton v. Roswell Indep. Sch.*, 111 N.M. 495, 507, 806 P.2d 1085, 1097 (Ct. App. 1991). A case presents an actual controversy "if the question posed to the court is real and not theoretical, the person raising it has a real interest in the question, and there is another person having a real interest in the question who may oppose the declaration sought." *Id.* The decision whether to assume jurisdiction in a declaratory judgment action is within the district court's discretionary power and is therefore reviewed

3

for an abuse of discretion. *Allstate Ins. Co. v. Firemen's Ins. Co.*, 76 N.M. 430, 433, 415 P.2d 553, 555 (1966).

**{9}** We cannot conclude that the district court abused its discretion when it determined that it had jurisdiction to resolve Moongate's request for a declaratory judgment. Here, the franchise between the City and Moongate had expired, and no new franchise had been negotiated. The City argued that the franchise remained in effect past its expiration date, but Moongate contended that it was no longer bound by the terms of the franchise. Thus, there was a real question as to whether the expired franchise continued to remain in effect past its expiration, Moongate had a real interest in determining whether it was bound by a franchise agreement, and the City had a real interest in determining whether the franchise had continued beyond its expiration such that it could oppose Moongate's motion. Therefore, the district court did not abuse its discretion in ruling on Moongate's motion for declaratory judgment.

**An Expired Utility Franchise Continues Under Implied Terms After Its Expiration**

**{10}** It is undisputed that the franchise between Moongate and the City expired by its terms on December 21, 2002. Moongate argues that upon the expiration of the franchise, it was relieved of all of its obligations under the franchise and that the franchise ceased to have any effect on its relationship with the City.

**{11}** Whether a public utility franchise continues past its expiration is a matter of first impression in New Mexico. Ordinarily, a public utility ceases to have any contractual relationship with a municipality upon the expiration of a franchise. *See* 12 Eugene McQuillin, *The Law of Municipal Corporations* § 34:69, at 256 (2006). However, if "the parties to a franchise agreement continue to perform after the expiration of the franchise in the same manner they did when the franchise was formally in effect," then the public utility operates "under an implied contract, cancelable upon reasonable notice, under the same terms and conditions as the franchise ordinance." *Id.* The rationale behind this rule is that "a public utility may not continue to reap the benefits of a franchise agreement after its expiration and be relieved of the burdens of the same agreement." *Id.* at 257.

**{12}** This general rule has been adopted by a number of jurisdictions that have considered the question. The Tenth Circuit, in *City of Roswell v. Mountain States Telephone & Telegraph Co.*, 78 F.2d 379, 386 (10th Cir. 1935), noted that while a municipality's continued acceptance of telephone services past the expiration of a franchise did "not vest the [utility] with a perpetual right in the streets and alleys," the continued use and provision of services did "constitute an implied agreement of indefinite duration, terminable within a reasonable time after their acceptance has ceased." Other jurisdictions have reached the same result. The Kansas Supreme Court, for example, applied this rule in *Baker v. City of Topeka*, 644 P.2d 441, 445 (Kan. 1982), concluding that the utility "could [not] continue to reap the benefits of the [franchise] after its expiration . . . yet be relieved of the burdens of the same agreement." *See also, e.g.*, *Village of Lapwai v. Alligier*, 207 P.2d 1025, 1027 (Idaho 1949) (adopting rule that a water company that continues to supply water after expiration of the franchise is bound by an implied contract); *Inc. Town of Pittsburg v.*

4

*Cochrane*, 159 P.2d 534, 538 (Okla. 1945) (noting that the expired franchise continues under implied terms and is cancelable upon reasonable notice); *City of Richmond v. Chesapeake & Potomac Tel. Co.*, 140 S.E.2d 683, 686 (Va. 1965) (noting that the expired franchise continues under implied terms).  In *Baker*, the court reasoned that "the parties by their actions and performance continued the terms of the [expired] agreement past the expiration date."  644 P.2d at 445.

**{13}**    Moongate argues that this general rule should not apply in New Mexico. Moongate makes only one argument with any direct bearing on this question, which is that the applicable statute requires a franchise to be granted by ordinance and any implied continuation of a franchise would therefore violate the statutory requirement.  *See* NMSA 1978, § 3-42-1(A) (1965).  We disagree.  Although Moongate is correct that Section 3-42-1 requires a franchise to be granted by ordinance, Moongate misconstrues the effect of an implied continuation of an expired franchise.  While Section 3-42-1 requires a municipality to pass an ordinance to grant a franchise, the continuation of an existing franchise beyond its expiration is not the grant of a franchise.  Instead, after a franchise expires, it is continued by operation of law as an implied contract as long as the public utility continues to provide utility services. Thus, it is not a new franchise that continues to govern the relationship between the parties after a franchise expires.  Instead, it is the same franchise that had governed the parties' relationship prior to its expiration—a franchise that was granted by ordinance in accordance with Section 3-42-1(A)—that continues to govern the relationship under the same terms, as long as the utility continues to provide service and until the parties negotiate a new franchise.  Thus, the requirement of Section 3-42-1 that a franchise be granted by ordinance is not violated by the continuation of an expired franchise.

**{14}**    Moongate makes three additional arguments supporting its position that a franchise cannot continue under implied terms, but all of these arguments revolve around whether a franchise is even necessary for Moongate's continued operation.  First, Moongate contends that an implied franchise is unnecessary because "municipalities have independent statutory authority . . . to address strictly local issues pertaining to public utilities" such that a "franchise is unnecessary to give a municipality that authority."  Even in the absence of a franchise, Moongate argues, the City can validly exercise its police power to impose regulations on public utilities and even require relocation of a utility's structures as long as the City's exercise of the power does not contravene public policy. *See City of Albuquerque v. N.M. Pub. Regulation Comm'n*, 2003-NMSC-028, ¶¶ 6-7, 134 N.M. 472, 79 P.3d 297 (noting that a municipality can require a utility to relocate at the utility's expense if in the interest of public health and safety subject only to limitations imposed by the Legislature). Second, Moongate argues that once it received a certificate of public necessity and convenience from the Public Regulatory Commission (PRC), it no longer required a franchise to continue its operation within the City and that it is in fact now obligated to provide service regardless of whether the City is willing to grant a franchise.  Third, Moongate argues that it receives no benefit from a franchise, contending that the purpose of a franchise is primarily fiscal, not regulatory, and that "the municipality alone benefits from a franchise."  In making this assertion, Moongate appears to be arguing that a franchise is unnecessary in that Moongate, as a regulated public utility with a certificate of convenience and necessity, does not require a franchise in order to continue its operations within the

5

municipality, and thus a franchise only benefits the City. All three of Moongate's arguments suggest that a franchise is an unnecessary element of its relationship with the City, and Moongate appears to be arguing that because a franchise is unnecessary, a franchise cannot continue under implied terms. We disagree.

**{15}** Moongate misconstrues the importance of a franchise. Section 3-42-1(A) provides that "[a] municipality *may* grant, by ordinance, a franchise to any person, firm or corporation for the construction and operation of any public utility." (Emphasis added.) Because other statutory provisions provide that a municipality *shall* grant a franchise under certain circumstances, Moongate contends that a franchise is optional if it is not required by one of these mandatory statutory provisions. This argument is without merit. A municipality is required to grant a franchise to a utility that has been granted a franchise by a board of county commissioners prior to the municipality's incorporation, and to a utility that is determined by the PRC to have a right to serve newly annexed territory if more than one utility claimed the right to provide service to the area. NMSA 1978, Section 3-42-2(A) (1965) (stating that "the governing body shall, without a vote by the electorate" grant a franchise "[i]f previous to the incorporation of a municipality, the board of county commissioners has granted" a franchise); NMSA 1978, § 3-7-2 (1993) ("The municipality shall grant a franchise to the utility that is to serve the territory annexed."). In all other situations, whether a municipality grants a franchise to a public utility is at the discretion of the municipality. *See* § 3-7-2. Section 3-7-2 does not, as Moongate contends, indicate that a franchise is not necessary in order for a public utility to use municipal rights-of-way.

**{16}** In fact, a utility cannot begin constructing its utility lines or providing services until it receives a franchise from a municipality and obtains a certificate of convenience and necessity from the PRC. NMSA 1978, § 62-9-6 (1967) (stating that a utility must show that it "has received the consent and franchise from the municipality wherein construction and operation is proposed" before it can obtain a certificate of convenience and necessity); *City of Albuquerque v. N.M. Pub. Serv. Comm'n*, 115 N.M. 521, 529 n.9, 854 P.2d 348, 356 n.9 (1993) (noting that Section 3-42-1(A) "does not empower municipalities to authorize public utilities to render service to municipal inhabitants" because "such authority resides exclusively with the [PRC]"). Without a franchise, a public utility is unable to construct its service lines or provide services to its customers, and thus, a franchise is an absolutely essential element of the relationship between a municipality and a public utility.

**{17}** Moongate argues, however, that once the certificate of necessity and convenience is granted by the PRC, a franchise is no longer necessary because a public utility is free to "condemn public property for rights of way" and the municipality's authorization to use public property is no longer necessary. In support of this argument, Moongate notes that NMSA 1978, Section 62-2-16 (1981) provides water utilities formed under NMSA 1978, Section 62-2-1 (1887) with "the power of eminent domain . . . in the manner provided by the Eminent Domain Code." Section 62-2-16.

**{18}** While we acknowledge that Section 62-2-16 grants the power of eminent domain to a water utility, we disagree with Moongate's contention that the existence of this power makes a franchise unnecessary. According to Section 62-2-16, a water utility's power of

6

eminent domain can only be carried out in the manner provided by the Eminent Domain Code, NMSA Section 42A-1-1 to -34 (1980, as amended through 2001). In order to bring about a condemnation action under the Eminent Domain Code, the condemnor must first attempt to negotiate the sale of the property, obtain an appraisal of the property, and may be required to post a surety bond in the amount that would constitute just compensation. Sections 42A-1-4, -5, -10. Once a condemnation action is filed, assuming that the condemnor is successful, the condemnor must then pay the condemnee just compensation for the taking of the property. Section 42A-1-24.

**{19}** While a condemnation proceeding allows a utility to obtain property through an expensive and contentious proceeding, a franchise, in contrast, allows a utility to use public property with the permission of the municipality upon terms agreed to by both parties. *City of Albuquerque*, 115 N.M. at 553, 854 P.2d at 360 (noting that the primary purpose of a franchise is to "entitle[] the utility to use the municipality's streets and rights[-]of[-]way to construct and operate its facilities and distribution system"). Because the utility franchise allows Moongate to use City rights-of-way with the permission of the City, and thus without resorting to condemnation, the franchise plays a vital role in the relationship between the parties. Thus, the mere fact that Moongate may have another method to obtain the property it needs to provide its services does not, as Moongate argues, indicate that a franchise is unnecessary. Instead, the franchise allows Moongate to use City land without the necessity of condemnation.

**{20}** Moongate next argues that a franchise is unnecessary because the majority of the obligations imposed on a public utility and most of the power a municipality has over a public utility exist independently of a franchise agreement. In support of this argument, Moongate notes that the City may use its police powers to regulate its streets pursuant to NMSA 1978, Section 3-18-17(B) (2008) (amended 2009), may regulate its structures pursuant to NMSA 1978, Section 3-49-1(A) (1967), may prevent utilities from interfering with public travel pursuant to Section 62-1-3, and may impose regulations upon the operation of public utilities within municipality limits pursuant to NMSA 1978, Section 62-1-2 (1909) and Section 62-2-21, as long as the City acts in accordance with public policy. We are not persuaded. The fact that some of the obligations and duties imposed by a franchise agreement exist independently of the franchise does not indicate that a franchise is unnecessary for the continued relationship between a utility and a municipality or that a franchise cannot continue beyond its expiration date when a public utility continues to provide services.

**{21}** While a franchise sets out a public utility's obligations to avoid interfering with public travel and to repair any public streets damaged by the utility's operations, the primary purpose of a franchise is to "entitle[] [a] utility to use the municipality's streets and rights[-]of[-]way to construct and operate its facilities and distribution system." *City of Albuquerque*, 115 N.M. at 533, 854 P.2d at 360. Thus, contrary to Moongate's argument, a franchise has a distinct and important purpose—granting a utility the right-of-way to use public property—that is not a part of the general police power of the City. *See City of Roswell*, 78 F.2d at 383-84 (noting that "[t]he term franchise usually means a grant of the right to use highways, streets and alleys," which is distinctly different from the police power

7

a municipality can utilize). Further, while Moongate argues that Section 62-2-13 allows the City to impose regulations on Moongate, Moongate fails to recognize that the method by which a municipality imposes such regulations is through a franchise. A franchise is therefore a necessary element in the relationship between Moongate and the City because the franchise alone gives Moongate permission to use City property under the terms imposed by the City and delineates the specific obligations both parties must abide by.

**{22}** We also reject Moongate's argument that a franchise is unnecessary because it is "primarily fiscal, not regulatory" and that the "municipality alone benefits from [the] franchise . . . [and] has an incentive to renew a franchise when it expires." As we have explained above, a franchise is a necessary and essential element of the relationship between a public utility and a municipality that benefits both parties by delineating the scope of the relationship between a utility and a municipality. While it is true that only the City can collect a franchise fee, Moongate mischaracterizes this fact as indicating that only the City benefits from the franchise. A public utility benefits from a franchise by being given a right-of-way on public lands to provide service to its customers. Moongate's franchise with the City allows it to avoid having to go through the process of condemning the rights-of-way it currently uses and paying the City the full value of the taken property. Thus, contrary to Moongate's argument, both the City and Moongate receive a fiscal benefit from the existence of a franchise.

**{23}** Because we conclude that a franchise is necessary for the continued operation of Moongate's utility, we necessarily reject Moongate's argument that because a franchise is unnecessary, an expired franchise cannot continue as an implied contract. Apart from its argument that a franchise is unnecessary, Moongate has presented us with no authority for rejecting the general rule that an expired public utility franchise continues under implied terms as long as both parties to the franchise continue to operate as they did prior to the franchise's expiration. Because we find the federal and out-of-state authority setting out this general rule persuasive, we hold that when Moongate's franchise with the City expired, the franchise continued as an implied contract under the same terms and conditions as the expired franchise because it is undisputed that Moongate continued to operate its utility.

**{24}** Finally, Moongate argues that even if the expired franchise continues under implied terms, the City cannot cancel the franchise and force Moongate to remove its service lines and stop providing service to its customers. This is because, Moongate contends, the PRC must approve the abandonment of a public utility's facilities and the cessation of utility services. We need not address this contention because there is nothing in the record suggesting that the City is intending to cancel the franchise or force Moongate to stop providing service to its customers. Moongate's argument is therefore merely a hypothetical supposition of what might occur at some point in the future. *See State ex rel. Stratton*, 111 N.M. at 507, 806 P.2d at 1097 (requiring the question posed to the appellate court to be real and not theoretical).

**An Expired Franchise Cannot Continue Under Implied Terms for More Than Twenty-Five Years From the Effective Date of the Original Franchise**

**{25}** Moongate finally argues that the continuation of an expired franchise on implied terms could impose an indefinite burden upon its customers. We disagree. Section 3-42-1(F) provides that "[n]o franchise ordinance shall be in effect for more than twenty-five years." Thus, while we hold that a franchise agreement remains in effect after its expiration, our holding must be viewed in light of Section 3-42-1(F). The record shows that Moongate's franchise was adopted by the City on July 18, 1988, and went into effect sometime shortly thereafter. Thus, consistent with our holding and the limitations imposed by Section 3-42-1(F), the franchise remains in effect under implied terms until the parties negotiate a new franchise agreement, until they cancel the existing implied contract, or until twenty-five years after the franchise first went into effect.

**Third-Party Beneficiary**

**{26}** The City's appeal initially presented a second question of whether Moongate was a third-party beneficiary of the contract between the City and Doña Ana. At the request of the parties, we stayed this appeal pending resolution of the third-party beneficiary issue in a related proceeding in the Tenth Circuit Court of Appeals. The parties stipulated that

> if the Tenth Circuit reverses and directs entry of summary judgment for the City on the third-party beneficiary issue, Moongate agrees that in the present appeal this Court may not only reverse but may direct entry of summary judgment for the City on the third-party beneficiary issue on remand to the state district court.

**{27}** In *Doña Ana Mutual Domestic Water Consumers Association v. City of Las Cruces*, 516 F.3d 900 (10th Cir. 2008), the Tenth Circuit held that Moongate was not a third-party beneficiary of the contract. Pursuant to the parties' stipulation, we reverse the district court's grant of summary judgment in favor of Moongate on the third-party beneficiary issue and remand to the district court with directions to grant summary judgment in favor of the City on that issue.

**CONCLUSION**

**{28}** For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Moongate. We remand to the district court with instructions to enter summary judgment in favor of the City on (1) the issue of Moongate's third-party beneficiary status, and (2) the existence of the franchise between Moongate and the City.

**{29} IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

9

**JONATHAN B. SUTIN, Judge**

_____

**MICHAEL E. VIGIL, Judge**

**Topic Index for** _Moongate Water Co. Inc. v. City of Las Cruces_**, No. 26,386**

| AE | APPEAL AND ERROR |
|----|------------------|
| AE-SR | Standard of Review |

| CN | CONTRACTS |
|----|-----------|
| CN-IC | Implied Contract |
| CN-TB | Third Party Beneficiary |

| CP | CIVIL PROCEDURE |
|----|-----------------|
| CP-SE | Settlement Agreement |
| CP-SJ | Summary Judgment |
| CP- TA | Third-party Actions |

| GV | GOVERNMENT |
|----|------------|
| GV-MU | Municipalities |
| GV-WS | Water and Waste Systems |

| JM | JUDGMENT |
|----|----------|
| JM-DJ | Declaratory Judgment |

| PR | PROPERTY |
|----|----------|
| PR-CD | Condemnation |

| PU | PUBLIC UTILITIES AND COMMUNICATIONS |
|----|-------------------------------------|
| PU-PU | Public Utilities, General |